## MISSOURI, K. & T. RY. CO. OF TEXAS v. BUNKLEY.

(Court of Civil Appeals of Texas. Dallas. Jan. 25, 1913. Rehearing Denied Feb. 22, 1913.)

1. REMOVAL OF CAUSES (§ 3*)—DIVERSITY OF CITIZENSHIP—EMPLOYER'S LIABILITY ACT.

Under the express provisions of the Federal Employer's Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), as amended by Act April 5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1324), an action for injuries to a servant of a nonresident railroad corporation, engaged in interstate commerce pursuant to such act, is not removable to the federal courts for diversity of citizenship.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 4, 5; Dec. Dig. § 3.*]

2. RAILROADS (§ 33*) — FOREIGN COMPANY—PROCESS—SERVICE ON LOCAL AGENT.

Where defendant, a foreign railroad corporation, was represented in G. county by a

resident local agent, service of process, in an action for injuries to a train porter, on such agent, was sufficient to confer jurisdiction over the corporation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 70, 71; Dec. Dig. § 33.*]

3. MASTER AND SERVANT (§§ 150, 158*)—INJURIES TO SERVANT—RAILROADS—TRAIN CONDUCTOR—DUTY TO WARN OF DANGEROUS PREMISES.

Where a train stopped at night on a trestle over a ditch, and the conductor, knowing that the trestle was floored on one side only, ordered plaintiff, a train porter, to carry the engineer's oil can to him as the train stopped, knowing that plaintiff did not know of the dangerous condition of the place, it was the conductor's duty to warn plaintiff of the danger and to alight on the safe side of the train, and his failure to do so, resulting in the porter's injury, was negligence, and was the proximate cause of his injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 297, 299–302, 304, 305–307; Dec. Dig. §§ 150, 158.*]

4. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT — RAILROADS — DANGEROUS PREMISES—ASSUMED RISK.

Where plaintiff, a railroad porter, was ordered by his conductor to deliver an oil can to the engineer while the train stopped at night on a trestle, which was floored on one side only, testified that he did not know that the train had stopped on a trestle, or that the trestle was planked only on one side, and, thinking that he saw the ground, alighted on the opposite side, falling into the ditch, and was injured, he did not assume the risk, as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1005, 1068–1088; Dec. Dig. § 288.*]

5. MASTER AND SERVANT (§ 154*)—INJURIES TO SERVANT—DUTY TO WARN — RAILROAD OPERATIVES.

Where a railroad conductor, having stopped a train at night on a trestle, ordered his train porter to carry an oil can to the engineer, knowing that the trestle was only planked on one side, the conductor was not authorized to presume that the porter knew of the location and construction of the trestle, and was not for that reason relieved from the duty to warn him of the danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 308, 309; Dec. Dig. § 154.*]

6. TRIAL (§ 256*) — REQUEST TO CHARGE—DUTY TO REQUEST INSTRUCTIONS.

Where a train porter was injured by falling from a trestle at night, as he was ordered to go forward to the engineer, an instruction stating the facts, which the jury were required to find in order to render verdict for plaintiff, was not affirmatively erroneous, because it omitted to require that the conductor should have known that plaintiff was ignorant of the location before they could find that he was negligent in not warning plaintiff; such omission being unavailable, in the absence of a request presenting the same.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

7. MASTER AND SERVANT (§ 296*)—INJURIES TO SERVANT—INSTRUCTIONS.

Where, in an action for injuries to a servant, the court charged that if plaintiff knew of the depression into which he fell, and that the trestle on which plaintiff's train stopped, when plaintiff alighted at night, had a footway on the east side thereof, but not on the west side, or must necessarily have known, by the exercise of ordinary care in the discharge of

his duties as a train porter, and by undertaking to alight on the west side, he was negligent, such contributory negligence should be considered under Federal Employer's Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), in determining the amount plaintiff was entitled to recover, the charge was not objectionable as limiting plaintiff's knowledge of the location and construction of the trestle to actual knowledge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

8. MASTER AND SERVANT (§ 227*)—INJURIES TO SERVANT—RAILROADS — OPERATION—ASSUMED RISK—CONTRIBUTORY NEGLIGENCE.

Where a porter was ordered by his conductor to go forward to the engineer at night when the train stopped for water, the porter was entitled to assume that the train would not be stopped, at the point where he was required to alight, over a trestle or bridge, and the train having been so stopped, and he having alighted and fallen into a ditch, the question of the manner or way in which he alighted was one of contributory negligence and not of assumed risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 668, 669, 672; Dec. Dig. § 227.*]

9. MASTER AND SERVANT (§ 295*)—INJURIES TO SERVANT—RAILROADS—EMPLOYER'S LIABILITY ACT—ASSUMED RISK.

Where, in an action for injuries to a train porter, under the Federal Employer's Liability Act, for injuries while alighting at night from the train on a trestle and falling into a ditch below, the court charged that plaintiff, in entering defendant's employment as a porter on its passenger trains, assumed all risks ordinarily incident to the business, but he did not assume any risk arising out of defendant's negligence, and that, if the jury did not believe that the accident was caused by defendant's negligence in failing to warn, plaintiff could not recover, such instructions amounted to a charge that, if the injury was caused by a risk ordinarily incident to the business, plaintiff could not recover.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by Ike Bunkley against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Alex. S. Coke and A. H. McKnight, both of Dallas, and Head, Smith, Hare & Head, of Sherman, for appellant. Wolfe, Maxey, Wood & Haven, of Sherman, for appellee.

TALBOT, J. The following statement of the nature and result of this suit, which is acquiesced in by the appellee, is taken from appellant's brief: "This is a suit for damages brought by appellee against appellant for personal injuries alleged to have been received by appellee while in appellant's service as a train porter. Appellee alleged that he was porter of one of appellant's trains, operated between Denison, Tex., and Parsons, Kan.; that the train in question was a north-bound train; that, when it arrived

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

at Big Cabin, the engineer's oil can was obtained to relieve a hot box, and, as the train left Big Cabin, the conductor directed him to take the oil can to the engineer either through the train or when it arrived at Vinita tank; and that, in an effort to comply with the conductor's instructions, he stepped from the train, fell into a creek, and was injured. The train stopped over a trestle. This trestle was floored on the east side, so that persons might walk in safety by the side of the train; on the west side it was not floored, and the appellee stepped off on the west side. It was dark at the time and place where he stepped off, and he alleged he did not know the conditions, and was not advised of them by the conductor. It was charged that appellant's conductor, knowing the situation and construction of the trestle, or being chargeable with notice thereof, negligently directed appellee to alight from the train in the darkness, negligently failed to notify him of the dangers of the situation, and negligently failed to advise him that he could alight with safety on the east side of the train. Citation issued March 20, 1911, citing appellant to answer on the first Monday in April, 1911. This was served March 23, 1911. On April 4, 1911, this being the first time it was called upon to answer in said case, appellant duly filed its petition for removal of said cause from the said Fifteenth district court to the United States Circuit Court for the Eastern District of Texas, and also tendered therewith bond for removal, which was duly approved. This petition was acted on by the court May 2, 1911, and in all things overruled, to which action of the court, in denying said petition of removal, appellant duly excepted and presented its bill of exception No. 1. On May 6th, appellant filed a motion to quash citation and service in the case, asserting that it is a foreign corporation, and that none of the persons served was its president, vice president, secretary, treasurer, general manager, local agent, or any other agent or representative, authorized to be served with citation. Testimony on this motion to quash was introduced, as set forth in defendant's bill of exception No. 2. The motion was by the court overruled, and appellant excepted. Appellant thereupon answered by general demurrer, a general denial, and a special plea that, if appellee was injured, it was due alone to his negligence and a risk assumed by him; that there was a safe way for him to have gone from the rear of the train to the front of the train, and he voluntarily chose the dangerous way; that he was guilty of negligence in not observing where he was going in the dark; that he had a lantern, and, if he had exercised due care for his own safety, he could have avoided being injured; and that he knew, or should have known, the situation and construction of the bridge, and it was his own carelessness that brought about the injuries. The case was tried on March 11, 1912, and resulted in a verdict in favor of appellee for $3,000. Appellant duly filed its motion for a new trial, including the errors herein complained of, which was overruled by the court March 25, 1912, and appellant appealed."

[1] Upon the ground that the suit involved a controversy between citizens of different states, the plaintiff being a resident of Grayson county, Tex., and the defendant a citizen of the state of Kansas, the defendant filed, in proper form and in due time, a petition and bond for the removal of the cause to the United States Circuit Court for the Eastern District of Texas. The petition was denied, and this ruling of the court is assigned as error. We think there was no error in this action of the court. The act of Congress April 22, 1908, known as the Employer's Liability Act, as amended by the act of April 5, 1910, provides: "The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States." The prohibition of the removal of causes arising under this act is not, in our opinion, limited to cases where the removal is based upon the ground that the action is brought under said act, and therefore involves a question arising under the law of the United States, but forbids as well the removal upon other grounds, such as diversity of citizenship. This construction of the statutes, while opposed by some of the decisions upon the subject, seems to be well supported by the following cases cited by counsel for appellee, which fairly express the view we entertain: Mondou v. Railway Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Symonds v. Railway Co. (C. C.) 192 Fed. 353; Hulac v. Railway Co. (D. C.) 194 Fed. 747; Strauser v. Railway Co. (D. C.) 193 Fed. 293; Saiek v. Railway Co. (C. C.) 193 Fed. 303; Ullrich v. Railway Co. (D. C.) 193 Fed. 768; McChesney v. Railway Co. (D. C.) 197 Fed. 85; Lee v. Railway Co. (D. C.) 193 Fed. 685; Railway Co. v. Boston et al., 142 S. W. 944; Railway Co. v. Cook, 100 Ark. 467, 140 S. W. 579; De Atley v. Railway Co., 147 Ky. 315, 144 S. W. 95. The view that Congress by the amendment of April 10, 1910, intended to withhold the right of removal for any cause, where the cause of action arises as in this case, is strengthened by the provisions of the Federal Judicial Code of March 3, 1911 (Act March 3, 1911, c. 231, 36 Stat. 1094 [U. S. Comp. St. Supp. 1911, p. 140]), which became effective January 1, 1912. Section 28 of the act defines removable cases, etc., but contains the following proviso, namely: "Provided, that no case arising under an act entitled 'An act relating to the liability of common carriers by railroad to their employés in certain cases,' approved April 22, 1908, or any

amendment thereto, and brought in any state court of competent jurisdiction shall be removed to any court of the United States." Lee v. Railway Co. (D. C.) 193 Fed. 685.

[2] The second assignment of error asserts that the district court erred in assuming jurisdiction of this case, and refusing to dismiss the same because the service was insufficient to give the court jurisdiction. It seems that service was had upon "through conductors handling trains for defendant, and its connection, the Missouri, Kansas & Texas Railway Company of Texas," and upon W. N. King, as defendant's local agent in Grayson county, Tex.; and appellant contends: (1) That, this being a suit for injuries to an employé, service upon such conductors was not authorized, and therefore a nullity; (2) that, according to the evidence, W. N. King was not the local agent of appellant. Whether the service upon the conductors was such as to require the defendant to appear and answer we need not determine. The evidence was sufficient to support the findings of the trial court that appellant was doing business in the state of Texas, and that W. N. King, upon whom service of citation was had, was its local agent, residing and representing it in Grayson county. This being true, it becomes immaterial, in this case, whether the service upon the conductors was valid or not. It appearing that W. N. King was the local agent of appellant, residing and representing it in Grayson county, the court did not err in overruling the motion to quash the citation. Such was our holding upon practically the same facts in the case of this appellant against Goodrich, 149 S. W. 1176, and upon very similar facts in the cases of Railway Co. v. Arms, 136 S. W. 1164; Railway Co. v. Kiser, 136 S. W. 852; Railway Co. v. Hale, 153 S. W. 411, decided at this term of court.

The third assignment of error complains of the court's refusal to instruct the jury, at appellant's request, to return a verdict in its favor. The propositions contended for under this assignment, in substance, are: (1) That, because of appellee's experience and knowledge of the locality of the tank and condition of the railroad track where he was injured, appellant did not owe him the duty, when the train stopped at the tank to take water, and appellee instructed to alight, to warn him of its construction with reference to the existence of a bridge upon which the train had stopped; (2) that, where the presumption arises that a train porter is familiar with the location and construction of a bridge, no duty rests upon his employer to warn him of the danger of alighting from a train at the bridge; (3) there being no duty on the part of appellant to warn appellee of the location and construction of the bridge, its failure to give the warning was not negligence; (4) that appellant was engaged in, and appellee was employed in, interstate commerce at the time of the injury, and the case is therefore controlled by the Federal Employer's Liability Act, and that under that act a train porter, when accepting employment, assumes the risk of injury resulting from his alighting from trains at bridges of ordinary construction, forming a part of the roadbed; (5) under the Federal Employer's Liability Act, a passenger train porter, who has been running on a particular division of railroad regularly for four or five months, and whose duties are to inspect the train at water tanks and other places, when instructed by the conductor to do so, is chargeable with notice of the location and construction of a bridge over a gulch within 56 feet of a water tank at which his train, when running north-bound, usually stops to take water, and assumes the risk of injury in alighting from the train while on the bridge; (6) that the failure of the conductor to warn appellee of the location and construction of the bridge, if negligence, was not the proximate cause of his injuries, and for that reason appellant was entitled to an instructed verdict.

We are of the opinion that the court did not err in refusing to give the peremptory instruction requested. The appellee, at the time injured, was in the service of appellant as porter on one of its passenger trains operated between Denison, Tex., and Parsons, Kan., and under the control and direction of the conductor in charge of the train. When the train arrived at Big Cabin, the engineer's oil can was obtained to relieve a hot box, and, after the train left Big Cabin, the conductor directed the appellee to take the oil can to the engineer either through the train or by alighting from the train when it arrived at Vinita tank. The porter could not, because of his inability to get through the baggage car, carry the oil can to the engineer "through the train." When the train reached Vinita tank, it was dark, and the train stopped upon a trestle or bridge spanning a gulch, exceeding 20 feet wide and 10 or more feet high. In this position of the train, appellee, in obedience to the command of the conductor, stepped off the train and fell to the ground under or near the bridge or trestle, and was injured substantially, as alleged in his petition.

Appellee, among other things, testified: "I live in Denison. On the 6th day of March, 1911, I was train porter of the Missouri, Kansas & Texas Railway Company from Denison to Parsons. * * * I had been on this run just going on five months when I was hurt. * * * Mr. Kirkpatrick was conductor. I obeyed his orders. The conductor directs me in my business on the train. I am subjected to his orders. He had a right to direct me in the performance of my duties. He (the conductor) says, 'Ike, here is the can. We must get it back to the engineer, because he will need it at Vinita when we stop, and we won't have time to fool with it there, because we have all these

Frisco passengers, and all our work to do there, and won't have time to fool with it. We must get this can back to him;' and he handed me the can, and I started to break right out to the engine then up the side of the car, and he says, 'Hold on, Ike, you can't make it up there. You will have to go through the train.' Well, I just run around and went up in the vestibule there over the hot box and waited for his further orders. I knew he had more to tell me. When he come up he says, 'Ike, you go through the train, go up to the baggage car, and knock on the door, and, if you can rouse that fellow, go through the baggage car and go over the tank and carry him his oil can while the train is running. Carry the engineer his oil can. If you can't get through, if you can't rouse him and get through, just set your can right down there, you see in the corner of the car in the smoker. * * * I think he will stop at the tank to get water; if he don't stop, I will stop him. Whenever he stops you can just hike out to the engine and carry him his can.' After the conductor gave me those orders, when he high-balled and started the train at Big Cabin, I undertook to deliver the oil can to the engineer. I didn't get through, because I couldn't rouse the baggageman, and I couldn't get through the baggage car. I came right back inside of the car and set my oil can and lantern down inside the smoker. That was right in the head end next to the baggage car. The train stopped at Vinita tank. When they stopped, I picked up my can and picked up my lantern; shoved my lantern up on my arm; and opened the door and walked right out. I walked out and shut the door behind me, and I walked out and just went down. The reflection of my lantern—my lantern was burning dim from being burned all night—and from the reflection of my lantern I seen the natural ground out in front of me as I went out, and I went right down. I didn't hesitate. Went down in a hurry, because I had to hurry. I went down, caught hold of the handhold of the car, and just stepped off, and I landed in the bottom of a gulch or ditch. I crawled out on the bank. The train was standing on the bridge, I noticed then. That was the first I ever saw anything like it. When I got into the car, after I got up out of the gulch, I went into the little smoking department. I sat down there about five minutes, and my conductor came in, Mr. Kirkpatrick, and when he walked in he seen I was all wet, and he asked me what in the world was the matter. I told him I fell in that bridge, some place down there, deep place by the tank. 'Why,' he says, 'that is a dangerous place, Ike. Clear forgot to tell you about that place. That is a dangerous place. It is a wonder they haven't fixed that place long ago. Some person will get killed right there in that place. I am sorry for you. I am sorry you fell in there. Are you hurt very bad?' He spoke again about the gulch, says, 'I don't see what is the matter with those people. They have got that bridged on one side, and the other side is not bridged, the same as if it wasn't a public place, and a man just as likely to pass on one side as on the other. It is bridged on the east side. A man that don't know anything about the place is just as liable to get off on one side as he is on the other.' Well, I didn't know anything about such a place being there. I told him I didn't know anything about it. He says, 'I know you didn't. I aimed to tell you about it, and I clear forgot it.' I got off on the west side. I didn't know anything about there being a bridge across the gulch on the east side of the track. The first time I heard of that was when Mr. Kirkpatrick spoke about it after he came into the car. The tank was on the east side of the road— of the track. They was taking water on the east side, and I knew I couldn't get to the engineer without getting wet was the reason I got off on the west side. * * * When I went off there it was between 3 and 5 o'clock, I suppose; as near as I can remember, between 3 and 5 in the morning. It was cloudy and bad. It had been raining bad. It was dark. I was looking forward when I walked down. I was looking down, but I was looking forward. My lamp reflected out from the car, and I seen the ground out in front. I knowed nothing else to see. I didn't know of any other place, or nothing, only the ground. I looked out and it was dark, and I seen what I was satisfied was the ground. I seen the grass and stuff in front of me. I don't know that it looked green, dry grass; wasn't much green grass at that time. When I walked down off the steps, I didn't hesitate. I just reached down and caught hold of the handhold, and that throwed the light of my lantern downward, and the grass and ground looked as natural to me down there as that floor does. That was where I was going to step. I seen it at a glance. I didn't get down and examine it. I just seen the grass and the ground down there; just walked out and seen at a glimpse the ground and grass in front of me; and I just turned loose the handhold and stepped down, and I just went down through the grass next to the north bank. What I thought was the ground was the grass; bound to have been, or else I wouldn't have went through it. It is not one of my duties, as train porter on a passenger train, when it stops to get out and inspect the train to see that it is all right, unless I have orders to do so. * * * I don't remember Mr. Kirkpatrick ever telling me to go out and inspect the train. I have never inspected any part of the train, unless the conductor at that very time tells me to. I never had my foot on the ground around that tank until I went in the hole. * * * If I had known

that there was a platform on the east side of the track, and there was no platform for passengers or for people walking along by the side of the train on the west side, I would have gone on the east side. * * * I never did have any instructions with reference to the inspection of trains. * * * I have never been ordered off at Vinita tank to inspect. I thought from my lantern the grass was in front of me, and when I got off I didn't see the gulch, but just merely saw the grass. I had my lantern, and it was well lighted."

Defendant's conductor, among other things, testified: That the porter was under his supervision; that he (the conductor) was familiar with the location and construction of that bridge there; that the porter was under his direct supervision all the time while on duty, and that it was his business to do whatever he told him to do; that he expected him (plaintiff) to get off at the smoker; that he expected him to get off on the other side from where he did get off, at the front end of the smoker, and take the can over at that tank stop; that he did not tell him about that bridge on the east side at this particular time; that he knew there was a walk on the east side of the trestle across the creek; that he did not tell appellee, when he gave him the can, there was no bridge on the west side of the trestle; that he supposed, from his orders to appellee, that he would get off there to carry that can to the engineer; that he did not tell him about the trestle there.

[3] We think it quite clear, from the evidence, that appellant's conductor, in charge of the train in question, was guilty of negligence in ordering the appellee, who was subject to his orders and controlled by him in his work, to alight from the train at the time and place, and under the circumstances surrounding him, to carry the oil can to the engineer, without warning him of the location and construction of the trestle. The conductor knew the train would stop on the trestle or bridge, and the evidence justifies the conclusion that such fact was unknown to the appellee, and that the conductor knew he did not know it; that said conductor knew that the trestle was "bridged" or "decked" on one side, and that the other side, and the side upon which appellee attempted to alight, was not "bridged" or "decked," and the place dangerous; that such condition of the trestle and the danger incident to an attempt to alight from the train there were unknown to appellee at the time he endeavored to obey the orders of the conductor; and that he was not chargeable with a lack of ordinary care in attempting to alight as he did. In Railway Co. v. Gray, 56 Tex. Civ. App. 61, 120 S. W. 527, upon a similar state of facts, this court held that "where a locomotive engineer, who was familiar with the track along his run, stopped the train

in the nighttime so that the engine stood on a trestle, and directed the fireman to get out of the cab and procure an implement that was carried on the side of the tender, the fireman fell through the trestle and was injured, the engineer was guilty of negligence." The evidence upon the issue of negligence on the part of appellant's conductor, in directing the appellee to alight from the train and carry the oil can to the engineer, is as strong as it was on the issue of the engineer's negligence in the respect referred to in the Gray Case, supra. Unquestionably, when appellant's conductor, Kirkpatrick, ordered the appellee to alight from the train, while it stood on the trestle, and deliver to the engineer the oil can, he had authority to do so, and was acting for the appellant.

Under the circumstances shown, the failure of the conductor to warn the appellee of the danger to be encountered by him in alighting from the train, at the time and place he did, to deliver the oil can to the engineer was a question to be considered in determining the issue of negligence on the part of the conductor; and the proposition that no duty rested upon appellant to warn appellee of the location and construction of the bridge is not tenable. It cannot be reasonably said, under the facts shown, that the presumption should obtain that appellee, as train porter, was familiar with the location and construction of the bridge; and therefore appellant did not owe him the duty to warn him of the danger of alighting from the train. On the contrary, we are of opinion, in view of the evidence in this case, that it was the duty of the conductor, who was acting for appellant, when giving appellee the order shown and heretofore referred to, to warn him of the danger to be encountered in obeying that order, and that the evidence was sufficient to warrant the conclusion that the failure to so warn him was the proximate cause of his injury. Appellee, among other things, testified: "I didn't know there was a gulch there at all until I fell in it. That was the first time I knew there was a bridge on the east side of the trestle, after I was told by Mr. Kirkpatrick that night after I was hurt. If I had knew that the bridge and trestle both were there, I sure would have taken the bridge. I would have stepped off on the bridge rather than to step in the hole."

[4] We are further of the opinion that it cannot be said, as a matter of law, under the circumstances of this case, that the appellee assumed the risk of injury in alighting from the train while it was on the bridge: The well-established rule is that, when the appellee entered the service of the appellant; he assumed all the risks and dangers ordinarily incident to his employment, but he did not assume any risk or danger growing out of the negligence of appellant, unless he had knowledge of such negligence, or in the or-

dinary performance of his duties must necessarily have known it. Clearly we would not be warranted in holding that the evidence conclusively established, as is, in effect, contended by appellant, that the whole situation in which appellee was placed was plainly observable by any one, and that appellee must be held to have known the facts, or to have been chargeable with knowledge of them. While he had been running over appellant's road, where the accident occurred, some four or five months, and there was some testimony to the effect that, on one or more occasions in the daytime, the train upon which he was working stopped at Vinita tank, yet he swore, as heretofore shown, that he did not know there was a gulch there until he fell in it on the occasion he was injured, and that that was the first time he knew there was a bridge there, or that the bridge had a plankwalk or passageway on the east side thereof. It further appears, without dispute, that when the train stopped on the bridge, and appellee attempted to alight, it was in the nighttime; and appellee says, in effect, that when he looked out it was dark, and he saw what he thought was the ground —what he was satisfied was the ground— and without knowing that the train was standing on a bridge, and without knowing there was a gulch below, he stepped out and fell. If, under the facts, the question of assumed risk was in the case, it was an issue of fact and not of law.

The fourth assignment complains of the sixth paragraph of the court's charge wherein the facts, which the jury were required to find in order to return a verdict in favor of the appellee, are grouped. Some of the objections urged to this charge involve questions which have been decided against appellant in disposing of its third assignment of error, and the other objections to the charge are not well taken.

[5] The conductor was not authorized to presume that appellee knew of the location and construction of the bridge; and having stopped the train upon the trestle in the nighttime and ordered appellee to alight at a point immediately over the trestle, knowing the trestle was there, without giving appellee notice thereof, the conductor was guilty of negligence, and the injury suffered by appellee, or some such injury, as a result of such negligence, might reasonably have been anticipated.

[6] A sufficient answer to the proposition that the charge in question was defective in that it authorized the jury to find that the conductor was negligent in not warning appellee of the location and construction of the bridge, without at the same time requiring a finding that the conductor knew, or should have known, that appellee was ignorant of these facts, is that the charge was not affirmatively erroneous because of the omission referred to; and, if appellant desired a charge requiring such a finding, a proper charge submitting the issue should have been prepared and requested by appellant.

[7] Nor do we think the charge under consideration, when read in connection with and in the light of the seventh paragraph of the court's instructions to the jury, is erroneous for the reason that it limits appellee's knowledge of the location and construction of the bridge to actual knowledge. The charge must be considered as a whole; and in the seventh paragraph thereof, wherein the issue of contributory negligence was submitted, the jury were instructed as follows: "Again, if you believe from the evidence that the defendant was guilty of negligence, as explained in paragraph 6 of this charge, but that the plaintiff knew of said gully or gulch, and that it had a footway for people to cross the same on the east side thereof, but none on the west side thereof, or must necessarily have known of the same, by the exercise of ordinary care in the discharge of his duties as such porter, and that, by undertaking to alight from said train at the place and in the manner in which he did, he was guilty of contributory negligence, as that term had been explained to you hereinbefore, that proximately contributed to cause his injuries, yet such contributory negligence would not prevent plaintiff's recovery for the injuries received by him, if any; but the damages, which you find plaintiff entitled to, should be diminished by you in proportion to the amount of negligence attributable to plaintiff in alighting from said car at the time and manner in which he did alight." From the language of this and the sixth paragraph of the court's charge, it is reasonable to conclude that the jury must have understood that if appellee had actual knowledge of the location and construction of the bridge, or must necessarily have known of the same by the exercise of ordinary care in the discharge of his duties, he could not recover. But, however this may be, we think the charge good as far as it went, and that, if appellant desired a fuller charge, such charge should have been prepared and requested, and that, having failed to request such a charge, it is in no position to ask a reversal because of the limited one given by the court. At all events, we think it may be safely said that the omission complained of did not mislead the jury to the prejudice of appellant.

The fifth assignment of error complains of the court's charge on the question of contributory negligence, and the sixth is that the court erred in refusing the following special charge requested by appellant, namely: "If you believe from the evidence that plaintiff knew, or under all of the circumstances should have known, of the situation of said bridge and its construction, and with such knowledge he left said car on the west side for the purpose of taking the oil can to the engineer, when he could have left on said east side with safety, then he must be held to have assumed the risk incident to his act,

and the defendant is not responsible for the injuries sustained on account thereof; and, if you so find and believe, your verdict will be for defendant." One of the propositions urged under the fifth assignment, in support of the contention that the charge on contributory negligence was erroneous, is that, where the question is whether the employé knew or was chargeable with notice of the location and construction of a bridge, it is one of assumed risk, and not of contributory negligence; and under the sixth assignment it is contended, in effect, that the issue of assumed risk was raised by the pleadings and evidence in this case; that such issue was not submitted in the general charge of the court; and therefore the court committed reversible error in refusing to give the special charge requested on the subject. It is further contended under the sixth assignment, as under the fifth, that, where a train porter knows, or is chargeable with knowledge, of the location and construction of a bridge, he assumes the risk of injury in alighting from a train at the bridge, and cannot recover for injuries received in so doing. Neither of these assignments or propositions should, in our opinion, be sustained under the facts of this case. We agree with the views of counsel for appellee that appellee did not assume the risk of alighting from appellant's train in the dark, in obedience to a specific order of the conductor, because he does not assume the risk of injury arising from the master's negligence.

[8] He can rely upon the proposition that the master will not stop the train at a point where he has directed him to alight in furtherance of the master's business, in the dark, over a trestle or bridge; and the manner or way in which he alights is not a question of assumed risk, but one of contributory negligence—that is to say, the manner or way in which the appellee alighted from the train, in obeying the order of the conductor, was a question of contributory negligence, and not one of assumed risk. If this is the correct view of the law, as applied to the facts of this case, then clearly the court's charge on contributory negligence, which is the basis of appellant's fifth assignment, was not error, but was a proper application of the law to the facts. And again, if the manner in which the appellee attempt-

ed to alight from appellant's train, when he fell and was injured, and the fact that he alighted on the west side, instead of the east side, where the bridge was covered with plank to afford a passageway along the bridge, were issues of contributory negligence under the facts proved, and not of assumed risk, then the special charge, upon which the sixth assignment is predicated, in telling the jury that, if they found the facts therein grouped to exist, appellee must be held to have assumed the risk incident to his act, and appellant would not be responsible for the injuries sustained by him on account thereof, was not a proper charge, and the court did right in refusing it. In such case, the existence of the facts enumerated in the special charge, unless the sole cause of appellee's injury, would not bar his right of recovery altogether, but by statute would have the effect only of diminishing his damages in proportion to the amount of negligence attributable to him in alighting from the train at the time and place and in the manner in which he did alight.

[9] However, the court, on the subject of assumed risk, instructed the jury that the "plaintiff, in entering the employment of the defendant as a porter on its passenger trains, assumed all risks ordinarily incident to the business, but he did not assume any risk arising out of the negligence of the defendant"; and by the sixth paragraph of the charge they were instructed, in substance, that, if they did not believe from the evidence that the accident was caused, as set out in that paragraph of the charge, to find for the defendant. The effect of the two paragraphs of the charge was to inform the jury that, if the injury to appellee was caused by a risk ordinarily incident to the business in which appellee was engaged, he assumed such risk, and could not recover.

The assignments of error and propositions which have not been stated and discussed have either been disposed of by what has already been said, or disclose no reversible error. The evidence is sufficient to support the verdict of the jury; and, as appellant, in our opinion, has suffered no substantial injury by any ruling or action of the court complained of, the judgment is affirmed.

Affirmed.