PLIBRICO JOINTLESS FIREBRICK COMPANY vs. THE WAL-
THAM BLEACHERY AND DYE WORKS.

Suffolk. December 3, 1930. — January 28, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Corporation*, Foreign: business in this Commonwealth. *Agency*, Exist-
ence of relation.

Under all the terms of a contract between a foreign corporation which
manufactured and sold fire brick and a "distributor" with offices in
this Commonwealth, including, among others, terms providing that
the distributor should solicit sales and supervise installations of the
brick here in return for a certain sum by way of a discount or com-
mission; that the distributor should carry the corporation's name in
the local telephone directory and upon his office door; that all orders
taken by the distributor should be subject to acceptance by the cor-
poration as to credit, price, terms and delivery; and that all orders
should be billed directly by the corporation and all bills collected
by it, it was *held*, that the relation between the corporation and the
distributor was that of principal and agent.

It further appearing, among other circumstances, that the distributor
above described carried on all correspondence with customers upon
stationery furnished by the corporation; that at least a carload of
brick was always on hand at each of ninety warehouses in the United
States and Canada, so that a communication addressed to the corpora-
tion's nearest office, or its head office, would "start . . . [the brick]
on its way to" a customer; and that the distributor sometimes col-
lected the sums due from customers, it was *held*, that the corporation
had a usual place of business in this Commonwealth not maintained
solely for the transaction of interstate commerce, within the provisions
of G. L. c. 181, §§ 3, 5.

It appearing that the corporation above described had not complied
with the requirements of G. L. c. 181, §§ 3, 5, it could not maintain an
action against a customer for work done and material furnished under
a contract between it and the customer.

CONTRACT. Writ in the Municipal Court of the City of
Boston dated August 28, 1929.

The defendant filed a plea in abatement. Upon removal
of the action to the Superior Court, the plea in abatement
was heard by *Weed*, J., without a jury. Material evidence
and rulings given and refused by the judge are stated in the

opinion. There was a finding for the defendant. The plaintiff alleged exceptions.

*J. M. Raymond,* for the plaintiff.

*A. M. Beale,* for the defendant.

PIERCE, J. This is an action of contract brought by the plaintiff, an Illinois corporation, against the defendant to recover a sum of money for work done and material furnished in accordance with the stipulations of a contract between them. The defendant filed a plea in abatement to the effect that the plaintiff corporation is one which comes within the provisions of G. L. c. 181, § 3, and that the plaintiff has not complied with the provisions of G. L. c. 181, § 5, relating to the qualification and right of foreign corporations to do business in this Commonwealth. At the hearing the plaintiff conceded " that it is an Illinois corporation and that it has not complied with the requirements of G. L. c. 181, § 3, but contended that there was no necessity for such compliance in its case." At the close of the evidence the plaintiff and defendant respectively filed requests for rulings of law. The judge filed a statement of his findings and rulings and found for the defendant upon the plea in abatement.

The case is before this court on the plaintiff's exceptions to the giving of four requests for rulings submitted by the defendant, to the judge's denial of the plaintiff's requests for rulings numbered 1, 2, 3, 4, 7 and 10, to the denial of its motion for a finding in its favor as matter of law, and to the following rulings of the judge: " 1. That the plaintiff is a corporation coming within the provisions of G. L. c. 181, § 3. 2. That the plaintiff had a usual place of business within this Commonwealth at the time and prior to the time when the contract in suit was made and this action begun. 3. That the plaintiff was transacting business within this Commonwealth at the time and prior to the time when the contract in suit was made and this action begun. 4. That said place of business was not maintained solely for the transaction of interstate commerce. 5. That the plaintiff has continued to transact business within the Common-

wealth. 6. That the plaintiff was a corporation which, under the circumstances disclosed by the evidence, should comply with the requirements of G. L. c. 181. 7. That in the circumstances found by the court the plaintiff cannot maintain this action."

At the hearing the defendant called as a witness Robert H. Wilder and introduced in evidence certain documents. No other evidence was offered by either party. From such evidence it appeared that the plaintiff has its principal office at Chicago, Illinois, and has factories in Chicago and in Trenton, New Jersey. It manufactures and sells fire brick, called Plibrico, for the lining of boilers. It markets its product in a section of New England through the medium of the Grant–Wilder Engineering Company, a copartnership, with offices in Boston, Cambridge and elsewhere. The relations between the plaintiff and the Grant–Wilder Engineering Company are governed by a contract dated June 30, 1928. By the terms of the contract the plaintiff is called therein the "Company" and the Grant–Wilder Engineering Company is "designated as the Distributor." In return for a specified agreement of the company to pay the distributor a certain sum by way of a discount or commission on the sales of Plibrico, the distributor agreed, during the continuance of the contract, to solicit trade for the product of the company in the territory assigned to the distributor and to pay and discharge all office and travelling expenses incurred by it or its agents in connection with the sale or marketing of the product of the company, and all charges incurred in the handling of the product for local distribution. The distributor also agreed "to carry the name . . . [of the company] in the local telephone directory and on . . . [the] office door [of the distributor] at his own expense." Further provisions of the agreement are: "3. Said Distributor further agrees to abide by all the rules, selling conditions and terms obtaining or maintained in the usual conduct of the business of said Company, and all orders taken by him or his agents shall be subject to the acceptance by said Company as to

credit, price, terms and delivery. . . . 6. Said Distributor will conscientiously supervise and service installations of Plibrico whenever it may be necessary and to the best of his ability to see that customers are instructed to use and install it properly so as to get satisfactory results in the use and service of Plibrico, and to carry Workmen's Compensation insurance as required by law to cover any workmen he may hire. . . . 11. It is further understood that although all orders shall be billed directly from Company to customers and all bills shall be collected by said Company, nevertheless, said Distributor shall keep said Company advised relative to customers' credit and conditions within his knowledge and aid and assist said Company when required in collecting past due or bad accounts in said territory. . . . 14. It is expressly understood that nothing in this contract or the relations established by reason of same shall in any way authorize said Distributor to sign the name of said Company to any commercial paper, contract or other instrument, nor to contract any debt or obligation binding said Company to the payment of money or otherwise obligating said Company without its consent in each specific instance first obtained in writing."

Under this contract the relation between the company and the distributor is that of principal and agent. *Eldridge* v. *Benson,* 7 Cush. 483. *Avondale Mills* v. *Benchley Brothers, Inc.* 244 Mass. 153. See annotations following the case of *D. M. Ferry & Co.* v. *Hall,* 188 Ala. 178, in L. R. A. (1917 B) 626. The plaintiff concedes that when the transaction between it and the defendant occurred the distributor had authority to sign its name to contracts and letters and to this extent was constituted an agent of the plaintiff, but upon the testimony of Wilder contends that since November 1, 1929, there is no evidence of any agency of the plaintiff in Massachusetts; that since November 1, 1929, the contracts and correspondence have all been in the name of the distributor; that the hearing before the trial judge on March 3, 1930, was long after this agency had

been revoked; that at the time of the trial there was no agency in Massachusetts and therefore the trial judge could not use this prior agency as a ground for finding and ruling, as he did, that the plaintiff at the time of the hearing had a usual place of business in Massachusetts. It is the further contention of the plaintiff that, after the revocation of the agency on November 1, 1929, upon the terms of the written contract the relation between the plaintiff and the distributor was not one of principal and agent but one of buyer and seller: that is, that the case was "clearly one of a 'distributor' who buys the manufacturer's product and resells to his own customers." We are of opinion, however, that paragraphs 3 and 11 are inconsistent with either a sale or a consignment to the distributor, and that they and the other paragraphs of the contract establish that the plaintiff at all times retained final authority as to the credit to be allowed customers and as to the collection of "past due or bad accounts."

It is to be noted that there is no provision in the contract which in terms requires the distributor to pay the company any sums at any time for the company's products sent f. o. b. Trenton to the distributor, and it is to be further noted that there is nothing in the contract which requires any action by the distributor as respects unsold or undisposed of Plibrico product. The distributor company, speaking through Wilder, testified in substance that in exceptional cases it handled in Cambridge collections when they became due for the Plibrico materials, and that it did so in the case of the defendant because the distributor "was interested in getting collection," that is, in getting the amount agreed to be paid it for services under paragraph 7 of the agreement, and in receiving the amount due it for labor and services and for materials it had furnished to the customer, all of which were included in an entire amount billed to the customer from the Chicago office of the company.

The evidence discloses that it was the practice, where the customer desired the fire brick to be installed, for the plaintiff to furnish the fire brick and for the distributor in accordance with paragraph 6 of the agreement to install it and pay the expenses thereof; that all orders taken by the distributor for the plaintiff's product were billed to the customer by the plaintiff and if the order included installation the plaintiff remitted to the distributor the amount collected by it less the price of the fire brick as fixed by paragraph seven of the agreement. All correspondence with customers relative to the plaintiff's product was carried on by the distributor on stationery furnished by the plaintiff. It further appeared from the evidence of Wilder and from the catalogue issued by the plaintiff, that at least a carload of Plibrico is always on hand at each of the ninety warehouse stocks in the United States and Canada; and that a " telephone call, a telegram, or a letter addressed to the nearest office . . . or to the executive offices in Chicago, will start Plibrico on its way to " a customer.

Because of the regularity of the business, of the existence of storage warehouses, and of the fact that the distributor was an agent to sell and at times to collect, the case at bar falls within the class of decisions of which the following are illustrations: *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, 241, *Marconi Wireless Telegraph Co. of America* v. *Commonwealth,* 218 Mass. 558, 569, *Reynolds* v. *Missouri, Kansas & Texas Railway,* 224 Mass. 379, *International Textbook Co.* v. *Pigg,* 217 U. S. 91, *Cochran Box & Manuf. Co. Inc.* v. *Monroe Binder Board Co.* 197 App. Div. (N. Y.) 221; affirmed 232 N. Y. 503; and is distinguished from *Bank of America* v. *Whitney Central National Bank,* 261 U. S. 171, *Butler Brothers Shoe Co.* v. *United States Rubber Co.* 156 Fed. Rep. 1 (certiorari denied 212 U. S. 577), *Cannon Manuf. Co.* v. *Cudahy Packing Co.* 267 U. S. 333, *Atlanta* v. *York Manuf. Co.* 155 Ga. 33, *I. J. Cooper Rubber Co.* v. *Johnson,* 133 Tenn. 562,

where the relation was that of vendor and purchaser, and not of principal and agent. It is also distinguishable from *Philadelphia & Reading Railway* v. *McKibbin*, 243 U. S. 264, on the facts, for there the defendant transacted no business in New York.

A consideration of all the facts, some of which are not stated *supra*, leads irresistibly to the conclusion that the trial judge was right in finding and ruling "that the plaintiff had a usual place of business and was transacting business within the Commonwealth at and prior to the time when such contract was made and this action begun; that said place of business was not maintained solely for the transaction of interstate commerce; that it has continued to transact business within the Commonwealth without complying with the requirements of" G. L. c. 181, §§ 3, 5. We find no error in the refusal to give the plaintiff's requests for rulings or in those which were given. It results that the finding for the defendant upon the plea in abatement must be affirmed.

*So ordered.*