SCHMIKLER v. PETERSIME INCU-
BATOR CO.

No. 4423.

United States Court of Appeals
First Circuit.

Nov. 15, 1949.

984

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and CLIFFORD, District Judge.

Morris Michelson, Boston, Mass. (Maurice Slovin with him on brief) for appellant.

James D. St. Clair Boston, Mass. (Joseph N. Welch and Hale & Dorr, Boston, Mass., with him on brief) for appellee.

CLIFFORD, District Judge.

This is an appeal from an order granting defendant's motion to dismiss.

In January of 1947, the plaintiff, a resident of Massachusetts, filed his complaint solely on diversity grounds in the United States District Court for the District of Massachusetts, alleging breach of warranty in goods sold by the defendant, an Ohio corporation, to the plaintiff. Damages in the amount of $10,000 were claimed.

This suit by the plaintiff was commenced by the service of summons upon one Austin Callander, a representative of the defendant, at Boston. On February 21, 1947, the defendant filed its motion to dismiss, in which it claimed that the court lacked jurisdiction over the person of the defendant, because it was not a citizen of the Commonwealth of Massachusetts and was not engaged in carrying on a business in that Commonwealth. The defendant claimed insufficiency of process in that Callander, to whom the summons and complaint were delivered, did not have sufficient authority to represent the defendant, so as to make service of process upon him equivalent to service upon the defendant. Approximately one year later, the plaintiff was allowed by the court to serve additional summons on one Lester J. Bangs, defendant's Eastern representative. The defendant thereupon filed a second motion to dismiss, identical with the first motion except that the name of Lester

J. Bangs was substituted for that of Austin Callander.

On February 4, 1948, the cause came on for hearing before the court (the late Healey, J.) upon these motions to dismiss. On April 8, 1948, the Judge filed his memorandum and on April 27, 1948, an order was entered denying the motion to dismiss the complaint.

On December 13, 1948, approximately eight months after the order denying the motion to dismiss was entered, the defendant filed its motion for rehearing of its motion to dismiss. This motion was heard and allowed by the Court on February 7, 1949, and, after rehearing, the Court, on March 17, 1949, ordered that the action be dismissed with costs. The presiding Judge based his order reversing the earlier ruling of Judge Healey on the authority of two cases decided in this court subsequent to Judge Healey's ruling; namely, Pulson v. American Rolling Mill Company, 1 Cir., 1948, 170 F.2d 193, and Kelley v. Delaware, L. & W. R. Co., 1 Cir., 1948, 170 F.2d 195.

The cause of action arose in Massachusetts.

The original findings of fact as made by Judge Healey were accepted as binding at the rehearing and were substantially as follows: The plaintiff was a citizen and resident of Massachusetts, and the defendant a corporation duly organized under the laws of Ohio. The complaint was filed as above stated; and attempted service was made on the defendant by giving in hand to Austin Callander and Lester Bangs copies of the summons and complaint. The defendant manufactured incubators and parts for incubators in its factory in Ohio and its product was sold throughout the United States. The defendant had no factory, warehouse, office, or store in Massachusetts; its name was not displayed in any place of business in Massachusetts, nor was it to be found in any telephone directory in Massachusetts. Austin Callander was employed by the defendant on a straight commission basis on sales. Callander owned his own car and paid for its expenses himself without reimbursement by the defendant, unless directed by the defendant to perform some special work for it. Callander's name and picture

.. 

appeared in advertisements of the Petersime Incubator Company in certain poultry publications, but he did not display the Petersime name on any sign at his home, from which he operated. Callander kept at his home various replacement parts for Petersime incubators, which were owned by him, being purchased from the defendant; and the defendant replaced any part used by Callander in servicing incubators for the defendant. Callander performed light repair service, all heavy service being done by workmen sent from the defendant's plant in Gettysburg, Ohio. Orders for Petersime incubators were taken by Callander in the following manner. The purchasers signed in triplicate a contract setting forth the type of incubator desired and its price. Among the clauses of the contract were the following:

"It is agreed that the title and right to possession of the herein described property shall remain in Petersime Incubator Company, until the entire purchase price has been paid, together with interest as provided whereon title and ownership shall be vested in the purchaser. * * *"

"It is agreed that purchaser keep incubator in good condition, and in its original construction, *not permitting service on same other than Petersime representatives;* * * *" [Emphasis added.]

After the contract was signed, the purchaser retained one copy, and two copies were transmitted to the defendant. If the defendant's president approved of the terms, he would sign the contract; and no sale was final unless it was approved by the defendant's president at the factory. If the president approved of the contract, the original, signed by both parties, would be recorded in the clerk's office of the city or town where the purchaser lived; and the other copy went to the files of the defendant, where it was kept under the purchaser's name until the payments were completed. All time payments were made by the purchaser directly to the defendant in Ohio. Callander, on making some sales, took in secondhand incubators as a down payment on the purchase price. Upon completion of a sale, the incubator would be shipped to Massachusetts by freight from Ohio and installed by Callander; or, in the case of large incubators, they would be shipped by truck and installed by employees of the defendant who came to Massachusetts with the truck. Although Callander, during much of the time he had been employed by the defendant, had also done other work, at the time he was served with process his sole employment was with the defendant.

Bangs was in charge of sales and service for the defendant in their Eastern territory, was paid a weekly salary and expenses, and came to Massachusetts from one to six times a year, one of which occasions was to be present at the poultry show. He attended the poultry show to meet customers, to demonstrate incubators, and to make sales at their exhibit at the poultry show. The defendant paid for the exhibition space, provided for the erection of a suitable booth, and shipped incubators and parts there for display purposes. Both Bangs and Callander attended the show in the hope of making sales and to demonstrate the defendant's product and meet its customers.

Rule 4(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides:

"* * * Service shall be made as follows:

* * * * * *

"(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *

* * * * * *

"(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

The applicable state statute is as follows, Massachusetts General Laws (Ter.Ed.) chapter 223, section 38, as amended: "In an action against a foreign corporation, except an insurance company, which has a usual place of business in the Commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the Commonwealth, permanently or temporarily, service may be made in accordance with the provisions of the preceding section relative to service on domestic corporations in general, instead of upon the commissioner of corporations and taxation under section three or section three A of chapter one hundred and eighty-one." As amended by St.1939, c. 451, sec. 61.

The relevant part of section 37 of chapter 223, Massachusetts General Laws (Ter. Ed.), as amended, is as follows: " * * * In an action against a domestic corporation * * * service shall be made upon the president, treasurer, clerk, cashier, secretary, agent or other officer in charge of its business, or, if no such officer is found within the county, upon any member of the corporation. * * *" As amended by St. 1945, c. 306, sec. 1.

In support of the order of the district court in dismissing the action, the defendant relies upon the authority of Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193. Pulson, a resident of Massachusetts, sued the defendant, an Ohio corporation, in the Federal court for the District of Massachusetts on a claim for breach of warranty of goods sold by the defendant to the plaintiff. The situs of the transaction did not appear. Service of summons was made upon the Massachusetts Commissioner of Corporations and Taxation, and upon an employee of the defendant in Massachusetts. The district court found as a fact that the defendant "had no representatives here except persons who solicit orders from Massachusetts prospects looking to transactions which are completed by contracts made in Ohio and shipments of goods made from points outside of Massachusetts to Massachusetts in interstate commerce." It was also found that defendant had no local bank accounts, made no collections or local deliveries, and that its sole business in Massachusetts was in connection with the solicitation of orders which were transmitted to points outside the state. The case was brought solely on diversity grounds. The defendant objected to the jurisdiction of the court, claiming it was not subject to suit in Massachusetts.

In that case this court held that jurisdiction of the Federal District Court of Massachusetts did not reach to a defendant foreign corporation where, under the rules of the Massachusetts decisions, the Massachusetts courts would not take jurisdiction. The facts in that case differed from those in the case at bar, and on those facts this court found that Massachusetts would not have taken jurisdiction, and, therefore, the judgment of the United States District Court, for the defendant on its motion to dismiss, was affirmed.

The court stated, 170 F.2d at page 194 and 195:

"There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? * * *

"Service upon foreign corporations in Massachusetts is covered by two chapters of the General Laws. The legislative language is very broad but the statute as applied by the Supreme Judicial Court of Massachusetts has expressly been limited not to cover the case of a foreign corporation which is engaged solely in the solicitation of interstate business within the state. Thurman v. Chicago, Milwaukee & St. Paul Ry. Co., 1926, 254 Mass. 569, 151 N.E. 63, 46 A.L.R. 563. * * *

"We think it is the business of the federal court to follow the state court's construction of its own statute, assuming, of course, that it does not transgress constitutional limitations, until the state court announces a different rule. We do so here."

Thurman v. Chicago, Milwaukee & St. Paul Ry. Co., cited above, was an action for the loss of a carload of rags delivered by the plaintiff to the defendant in Minnesota for shipment to Illinois and later, with the

assent of the defendant, ordered to be delivered to a town in the State of Pennsylvania. The railroad filed an answer in abatement to which Thurman demurred. The facts well pleaded in the plea were accepted as true for the purpose of the decision. The defendant was a foreign railroad corporation engaged in interstate commerce wholly outside the Commonwealth of Massachusetts, and did not own, operate or control any railroad within the Commonwealth. In fact, it did no business within the Commonwealth, except to maintain an office in the City of Boston, solely for the solicitation of interstate freight and passenger traffic to be transported over its railroad outside the Commonwealth; and the person upon whom service was made occupied the solicitation office of the railroad in Boston to carry on its business as above stated, and for no other purpose. The contract in issue was neither made nor performed in Massachusetts.

The demurrer to the plea was sustained and the case was reported to the Supreme Judicial Court of Massachusetts for determination. The order sustaining demurrer to the plea was reversed and the demurrer overruled. The court ruled, 254 Mass. at page 572, 151 N.E. 63, 64, 46 A.L.R. 563: "* * * that simple solicitation of business by a foreign corporation does not constitute such doing of business as to warrant the inference of liability to service of process."

Defendant has cited no case from the Massachusetts courts which rules that a corporation is not "doing business" in the Commonwealth under circumstances comparable to those in the case at bar. The federal court cases of Ladd v. Brickley, 1 Cir., 1946, 158 F.2d 212, and Bellar v. Lake Erie Chemical Co., D.C.Mass.1941, 41 F. Supp. 676, cited by defendant, are distinguishable on their facts. Each of the cases cited by both parties, however, shows the application of the rule in the Thurman case, that solicitation alone will not subject a foreign corporation to suit in Massachusetts, but that solicitation plus further activities of an intrastate character is enough to bring a foreign corporation within reach of Massachusetts process.

Of the cases cited by the plaintiff, the facts in the case of Plibrico Jointless Firebrick Co. v. Waltham Bleachery, 1931, 274 Mass. 281, 174 N.E. 487, are, in many respects, like those in the case at bar. This was an action by an Illinois Corporation against a Massachusetts resident for the value of labor and materials furnished. Defendant filed a plea in abatement to the effect that plaintiff, which had not registered as a foreign corporation doing business in Massachusetts, was in fact doing business in Massachusetts, and therefore, lacked capacity to sue in Massachusetts courts. The trial court sustained the plea on this ground, and the Supreme Judicial Court of Massachusetts affirmed.

Plibrico Company's sales distributor in Massachusetts was a Massachusetts partnership, and the relationship between Plibrico and distributor was defined by a contract between them. In return for specified commissions on sales, distributor solicited sales for Plibrico, the distributor paying all necessary expenses of solicitation. The distributor carried Plibrico's name on its office door and in the local telephone directory and used Plibrico's stationery. The distributor was not empowered to bind the company to any contract without the latter's consent; and all orders taken by the distributor were subject to approval or rejection at Plibrico's home office. The distributor supervised installations of the Plibrico product, and did service work where necessary. All bills for the product sold were payable directly to the company's home office; but distributor advised the company as to its customers' credit standing. Plibrico kept a carload of its product in the custody of the distributor at all times. Business was carried on regularly by the distributor on these terms.

On these facts, the Massachusetts court ruled that Plibrico had a regular place of business in Massachusetts and was transacting business in the Commonwealth, and that this place of business was not maintained solely for the transaction of interstate commerce. The court held, therefore, that under such circumstances the company was required to register in accordance with the laws of Massachusetts (Ter.Ed.) c. 181,

secs. 3 and 3A; and having failed to do so, the company had no standing to sue in the courts of Massachusetts.

In the case at bar, the defendant corporation had, as its sales distributor Austin Callander, a resident of Massachusetts, who solicited sales for the defendant on a commission basis, paying all necessary expenses of solicitation himself. Although the defendant's name was not carried in the telephone directory, and it had no office or store in Massachusetts, and although Callander did not display the Petersime name on any sign at his home from which he operated, yet the name and picture of Callander appeared in poultry publications advertising the product of the defendant. All orders taken by Callander, as in the Plibrico case, were subject to approval or rejection at the home office of the defendant corportion; and Callander, likewise, was not empowered to bind the defendant to any contract without the defendant's consent.

■ In the instant case the representative of the defendant installed the lighter machines and did light service. The installation of the heavier type of machine and major repairs were done by representatives of the defendant, who were sent by the defendant from its plant in Ohio for that purpose. Further facts in the instant case not present in the Plibrico case may be noted, in that title and right to possession of each incubator remained in the defendant until paid for by the purchaser, and these conditional sale contracts were recorded in the office of the clerk of the city or town in which the purchaser lived. As in the Plibrico case, all time payments were made by the purchaser directly to the defendant corporation in Ohio. Petersime rendered to its customers a like service to that rendered by Plibrico, in keeping a stock of replacement parts available for the purchaser, since, although this stock was owned and paid for by Callander, it was replenished by the defendant as it was used up in servicing defendant's product.

The facts in the case at bar disclose that the defendant, in addition to its activities as stated herein, paid for exhibition space at the poultry show held in Boston, provided for the erection of a suitable booth, shipped incubators and parts for display purposes, and through its representatives, Callander and Bangs, solicited orders, demonstrated its product, conferred with customers, and attempted to make sales at the poultry show. At the time service was made on Callander he was working full time for the corporation.

We have in the case at bar a factual situation showing, in addition to solicitation of interstate business, other activities which, in combination, constituted a well-settled and continuous course of business over a protracted period. In our opinion the defendant was present and carrying on business in Massachusetts within the meaning of the Massachusetts statute relating to service, as interpreted by the Massachusetts courts.

■ In its brief, the defendant suggested a constitutional issue; namely, that assumption by the Federal District Court of jurisdiction over the defendant would violate the federal constitution. This issue was not stressed in the brief or argued before this court on appeal. The rule of Thurman v. Chicago, Milwaukee & St. Paul Ry. Co., 1926, 254 Mass. 569, 151 N.E. 63, 46 A.L.R. 563, which this court here follows, was designed to meet the constitutional requirements of jurisdiction laid down in the old United States Supreme Court cases. Green v. Chicago, B. & Q. R. Co., 1907, 205 U.S. 530, 533, 27 S.Ct. 595, 51 L.Ed. 916; International Harvester Co. v. Kentucky, 1914, 234 U.S. 579, 586, 587, 34 S.Ct. 944, 58 L.Ed. 1479; Philadelphia & Reading R. Co. v. McKibbon, 1917, 243 U.S. 264, 268, 37 S. Ct. 280, 61 L.Ed. 710; People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 87, 38 S.Ct. 233, 63 L.Ed. 587, Ann.Cas. 1918C, 537.

The case of International Shoe Company v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 157, 90 L.Ed. 95, 161 A.L.R. 1057, demonstrates that the constitutional requirements of jurisdiction have been liberalized and are not as strict as they were formerly presumed to be. This case arose by appeal from a judgment upholding the constitutionality of applying a state unemployment compensation tax statute to the

appellant corporation. In that case the plaintiff, International Shoe Company, a Delaware corporation, had its principal place of business in Missouri, and engaged in the manufacture and sale of shoes and other footwear. It maintained a place of business in several states, other than Washington, at which its manufacturing was carried on and from which its merchandise was distributed interstate through several sales units or branches located outside the State of Washington. International had no office in Washington and made no contracts there either for sale or purchase of merchandise. It maintained no stock of merchandise in that state and made no deliveries of goods in intrastate commerce. The company employed eleven to thirteen salesmen under direct control and supervision of a sales manager in Missouri. These salesmen resided in Washington; their principal activities were confined to that state; and they were compensated by commissions based upon the amount of their sales. International furnished the salesmen with a line of samples to be displayed to prospective purchasers. On occasion salesmen rented temporary quarters to exhibit samples for which they were reimbursed by the company. The authority of the salesmen was limited to exhibiting samples, and soliciting orders from prospective buyers at prices and terms fixed by the company. The salesmen transmitted the orders to the company's office in Missouri for acceptance or rejection; and, when accepted, the merchandise for filling the order was shipped f. o. b. from points outside Washington to purchasers within the state. All the merchandise shipped into Washington was invoiced at the place of shipment, from which collections were made. No salesmen had authority to enter into contracts or to make collections. Washington levied an unemployment compensation tax on the company, which challenged the constitutionality of the levy under the 14th Amendment, as a denial of due process. The Supreme Court of Washington was of the opinion that the regular and systematic solicitation of orders in the state by International salesmen, resulting in a continuous flow of the company's product into the state, was sufficient to constitute doing business in the state so as to make the company amenable to suit in its courts. But it was also of the opinion that there was sufficient additional activity shown to bring the case within the rule of Green v. Chicago, B. & Q. R. Co., cited above, that solicitation within a state by the agents of a foreign corporation, plus some additional activities there, is sufficient to render the corporation amenable to suit brought in the courts of the state to enforce an obligation arising out of its activities there. The additional activities found by the court consisted of "the salesmen's display of samples sometimes in permanent display rooms, and the salesmen's residence within the state, continued over a period of years, all resulting in a substantial volume of merchandise regularly shipped by appellant to purchasers within the state."

The United States Supreme Court, in affirming this decision, used the following words, 326 U.S. 310, at page 319, 320, 66 S. Ct. 154, 160, 90 L.Ed. 95, 161 A.L.R. 1057:

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. (Citing cases.)

"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. * * * It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure."

It is the opinion of this court that the Massachusetts rule as we have applied it to the facts of the case at bar is supported by the constitutional test of reasonableness laid down in the International Shoe Co. case, and the contention of the defendant that assumption of jurisdiction over it would violate the Federal Constitution cannot be sustained.

Therefore, the order of the District Court dismissing the complaint herein for lack of jurisdiction must be vacated, and the case remanded to the District Court for disposition on the merits; the appellant recovers costs on appeal.