**WADELL v. GREEN TEXTILE ASSO-CIATES, Inc., et al.**

Civ. A. No. 8844.

United States District Court
D. Massachusetts.
June 23, 1950.

Noel W. Deering, Boston, Mass., for New York, N. H. & H. R. R.

Ely, Bartlett, Thompson & Brown and John O. Parker, all of Boston, Mass., for Southern R. Co.

Joseph P. Rooney, L. P. Manning, Boston, Mass., for Hebron Warehouse & Processing Co.

John S. Slater, Charles M. Goldman and Slater & Goldman, Paul R. Frederick, Charles C. Petersen and Badger, Pratt, Doyle & Badger, all of Boston, Mass., for defendant, Green Textile Associates, Inc.

McCARTHY, District Judge.

 There is before me the motion of the defendant, The Southern Railway Co., to dismiss plaintiff's summons and complaint. The plaintiff is Earl F. Wadell, alleged to be a resident citizen of Swannanoa, North Carolina. The defendants are 1) The Green Textile Associates, Inc., a Massachusetts corporation; 2) The Hebron Warehouse and Processing Co., a Massachusetts corporation; 3) The New York, New Haven & Hartford Railroad, alleged to be a "foreign corporation"[1]; and The Southern Railway Company, a Virginia corporation. An amount in controversy in excess of $3,000, exclusive of interests and costs, is alleged.

The action sounds in tort for negligence, it being alleged that the plaintiff was injured at Swannanoa, North Carolina, while helping to unload a freight car containing forty bales of cotton waste "by reason of one of the bales of cotton waste being precipitated upon his head, back and body when the door was opened". The complaint alleges that the box car in question at one stage of its journey from Attleboro, Massachusetts, to Swannanoa, North Carolina, was "transferred and routed to The South-

Frank P. Ryan, Worcester, Mass., for plaintiff.

---

1. The defendant New York, New Haven & Hartford Railroad has answered alleging that it is not a foreign corporation but rather a domestic corporation. The Court will take judicial notice that this defendant is a Massachusetts corporation, chartered by a special act of the Massachusetts Legislature, St.1872, c. 171. While the New York, New Haven & Hartford is also incorporated in other states, the Court will indulge in a presumption that the plaintiff in going to a foreign state to sue is deemed to sue the corporation incorporated in the foreign state of the forum, i. e. here, the Massachusetts corporation. Boston & Maine R. R. v. Hurd, 1 Cir., 108 F. 116, 56 L. R.A. 193; Muller v. Boston & Maine R. R., D.C., 9 F.Supp. 802.

740

ern Railway Company as connecting carrier".

Alleged jurisdiction over The Southern Railway Company was obtained by service of process on Edgar B. Howes, New England passenger agent, in its Boston office. Defendant Southern Railway Company appearing specially alleges that such service cannot give this Court jurisdiction and moves to dismiss the summons and complaint. It contends that it is not subject to the jurisdiction of the District Court for the District of Massachusetts because 1) it is not doing business in Massachusetts and hence is not so present in Massachusetts as to give the Courts of that Commonwealth or this Court jurisdiction over it in this suit, 2) the subjection of it to the Courts of Massachusetts or this Court under the circumstances of this case would result in a violation of the due process clause of the Fourteenth Amendment and an undue burden in interstate commerce. United States Constitution, Article I, § 8 cl. 3.

The parties involved in this motion have entered into a stipulation of fact and there is also before me the deposition of Roland Arthur Davis, New England freight agent of The Southern Railway Company. From these sources I find the following facts.

The defendant Southern Railway Company (hereinafter sometimes called Southern) does not own, control or operate any lines within the State of Massachusetts. Some of its rolling stock is at times within Massachusetts in interstate commerce but the local office has no control over its movements. The only business transacted in Massachusetts is through the office of its New England representative. The New England freight agent and the New England passenger agent of The Southern Railway Company are located at 80 Boylston Street, Boston, Massachusetts, for which location Southern pays a rental fee. Mr. Davis, the freight agent, acted as intermediary between the executive officers of Southern and the building management in transmitting information from one to the other to arrive at a satisfactory rental fee and rental conditions under the present lease. This office has been maintained continuously since 1921 (p. 9, Dep.) and with some interruptions since about 1896 (p. 8, Dep.). Besides Mr. Davis there are three other employees in the Freight Division at Boston; Mr. Howes, the passenger representative, has one other employee under him; all of these employees are residents of Massachusetts (p. 6, Dep.; p. 2, Stip.). Southern leases the office space, furnishes the office with stationery (p. 13, Dep.), prints its trade-mark on the office doors (p. 10, Dep.) and in the directory in the lobby of the building (p. 11, Dep.) and maintains an illuminated sign in the corridor. There is also window advertising, displaying either the words "Southern Railway System" or a medallion trade-mark (p. 11, Dep.). Southern timetables are available at various stations and hotels in Boston, including the office at 80 Boylston Street, which timetables have been distributed and placed in their respective locations by an independent contractor employed directly by the principal office in Washington, D. C. (p. 3, Stip.). This defendant lists itself in the telephone directory in several places (p. 12, Dep.). Members of the Boston office are paid by sight draft drawn on the Treasurer of Southern in Washington, D. C. (p. 45, Dep.). Although Southern has no passenger tickets for sale in its office, either for travel over the Southern Railway lines or the lines of any other railroad, it does arrange transportation for passengers over its lines and those of other railroads. The passenger representative writes a so-called "street order" or voucher on the New Haven, or Pennsylvania, or Boston & Albany Railroad, which have tickets of their own for sale. These tickets include the right to ride over that part of the Southern Railway lines which is included in the particular trip. The New Haven, Pennsylvania or Boston & Albany will then issue the ticket for the entire trip on this "street order". The entire ticket is then delivered by the passenger representative of Southern to the passenger requesting the same. The money obtained from the passenger is deposited in Southern's bank account. These deposits so made are disbursed in their entirety within three days from their deposit to the particular railroad issuing the ticket. Ultimately Southern receives its share of

the ticket purchase money through an interline accounting procedure which takes place outside the Commonwealth (pp. 2, 3, Stip.). Southern maintains a bank account in a Boston bank which consists of a working fund of Southern's funds in the amount of $1,000. For the past five years the passenger representative has deposited in this bank account an average monthly deposit of $4,000, these funds being obtained through arranging for transportation as described above (p. 2, Stip.). The freight agent, Mr. Davis, is privileged to make payment of small bills incurred in the course of business up to and not exceeding five dollars, for which expenditures he is reimbursed by the Treasurer of Southern (p. 19, Dep.). On rare occasions the Freight Office issues exchange bills of lading (p. 23, Dep.); it traces shipments for shippers or consignees (p. 25, Dep.) and "expedites freight" (p. 27, Dep.). The passenger representative does not investigate accidents or handle complaints from passengers, although if a complaint is addressed to the Boston office he will forward it to the main office in Washington, D. C., for handling (p. 3, Stip.). The freight agent investigates complaints of service or running time of a shipment to determine whether or not the shipment was on Southern and then passes it on to Southern's executives or operating department for action (p. 26, Dep.). If a claim for loss or damage is made, the freight agent assists the claimant in the proper preparation or the proper assembling of the necessary papers and then refers the matter to the Freight Claim Department outside Massachusetts (p. 48, Dep.). Southern pays personal property taxes to the City of Boston through Washington, D. C., but pays no Unemployment Security Tax to the Commonwealth of Massachusetts (p. 18, Dep.).

Rule 4(d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A., permits service of process on a foreign corporation to be made in the manner prescribed by the law of the state in which service is made. Under Massachusetts G.L.(Ter.Ed.) c. 223, § 38, service upon a foreign corporation "which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth" may be made upon the "president, treasurer, clerk, cashier, secretary, agent or other officer in charge of its business". Section 37.

Southern contends that its activities within Massachusetts amount to solicitation of interstate business and that it is not engaged in doing business beyond mere solicitation. Reliance is placed on the cases of Green v. Chicago, Burlington & Quincy Railroad Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, and Kelley v. Delaware, L. & W. R. Co., 1 Cir., 170 F.2d 195. If Southern is engaged in mere solicitation of interstate business, then it would not be covered by Mass. G.L.(Ter.Ed.) c. 223, § 38, under the interpretation of the statute by the Massachusetts Courts as applied by our Court of Appeals. Thurman v. Chicago, Milwaukee & St. Paul Railroad Co., 254 Mass. 569, 571, 151 N.E. 63, 46 A.L.R. 563; Ladd v. Brickley, 1 Cir., 158 F.2d 212; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193; Kelley v. Delaware, L. & W. R. Co., supra; Schmikler v. Petersime Incubator Co., 1 Cir., 177 F.2d 983. Plaintiff does not quarrel with this proposition. But, after a consideration of the evidence, I am of the opinion that there is more here than mere solicitation of interstate business and that the facts show that Southern transacts within the Commonwealth of Massachusetts enough substantial business beyond solicitation to warrant service of process upon it. The activities of Southern within the Commonwealth in the case at bar are much broader and more extensive than were found in the Green and Kelley cases, supra. They more nearly approach the facts in Reynolds v. Missouri, Kansas & Texas Railway Co., 224 Mass. 379, 113 N.E. 413; Stein v. Canadian Pacific Steamships Ltd., 298 Mass. 479, 11 N.E.2d 457; and Isenberg v. Atlantic Coast Line R. Co., D.C., 82 F.Supp. 927. While many of the elements alone might be held not to be a doing of business, it appears that, grouped in combination, they constitute a doing of business within the commonwealth sufficient to subject this defendant to service of process.

Service of process upon an agent of a foreign corporation engaged in busi-

ness in the commonwealth, as I find the Southern to be, does not violate the due process clause of the Constitution. Canadian Pac. Ry. Co. v. Sullivan, 1 Cir., 126 F.2d 433, 438; Stein v. Canadian Pacific Steamships Ltd., supra.

 Nor can I agree with the defendant Southern that the maintenance of this action would impose an undue burden on interstate commerce. It is true that here the plaintiff is a nonresident of the state of the forum, in which respect the case differs from the Isenberg case, 82 F.Supp. 927, the Sullivan case, 126 F.2d 433, the Stein case, 298 Mass. 479, 11 N.E.2d 457, and others. The Massachusetts Supreme Judicial Court has found no undue burden on interstate commerce as a matter of law in a case where the plaintiff was a nonresident, the defendant was a foreign corporation doing business within the commonwealth and the cause of action arose outside the jurisdiction. Trojan Engineering Corp. v. Green Mountain Power Corp., 293 Mass. 377, 384, 200 N.E. 117. The question, however, is governed by federal law. Davis v. Farmers' Co-op Equity Co., 262 U.S. 312, 43 S. Ct. 556, 67 L.Ed. 996, and cases following, cited by Southern, involved the question of whether a state statute violated the commerce clause, were suits brought in state courts, and are distinguishable. In the Davis case the state statute compelled submission to suit within the state as a condition of maintaining a soliciting agent therein. It has been limited to the facts there disclosed. International Milling Co. v. Columbia Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396. In the instant case jurisdiction is conferred upon this court by a federal statute, 28 U.S.C.A. § 1332(a) (2). The venue is properly laid under 28 U.S.C.A. § 1391(a, c), the latter subsection providing that a corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business and that such judicial district shall be regarded as the residence of such corporation for venue purposes. If the effect of federal statutes conferring jurisdiction upon a federal court is to place a burden on interstate commerce, the power for that purpose exists, and the remedy is legislative and not judicial. I find no unreasonable burden upon interstate commerce to exist as a matter of law; I do not, however, intimate what the decision of the District Court might be if Southern should invoke the Court's discretion under the doctrine of forum non conveniens, 28 U.S.C.A. § 1404(a), and support such a motion with proper factual data as to the burden in fact upon the Southern in defending this action in this district.

Motion denied.