INSURANCE CO. OF NORTH AMERICA v. LONE STAR PACKAGE CAR CO., Inc. (BALTIMORE & O. R. CO., et al., third-party defendants) and five other cases.

Civ. Nos. 6281, 6610, 1376, 1386, 1402, 1403.

United States District Court, S. D. Texas, Houston Division.

Aug. 28, 1952.

Fulbright, Crooker, Freeman & Bates, Malcolm McCorquodale, Houston, Tex., for Insurance Co. of North America.

Butler, Binion, Rice & Cook, M. R. Wilkey, Houston, Tex., for Lone Star Package Car Co., Inc.

Hutcheson, Taliaferro & Hutcheson, Palmer Hutcheson, Jr., Houston, Tex., for Baltimore & O. R. Co.

Helm & Jones, Albert Jones, Houston, Tex., for Mrs. Betty Tullis.

Baker, Botts, Andrews & Parish, R. L. McDermott, Houston, Tex., for Southern R. System.

Brian S. Odem, U. S. Atty., and W. R. Eckhardt, Asst. U. S. Atty., Houston, Tex., for United States.

O. O. Touchstone, Dallas, Tex., for Union Pac. R. Co.

Armstrong, Bedford & Lambdin, G. D. Lambdin, Galveston, Tex., for Chicago, M. St. P. & Pac. R. Co.

CONNALLY, District Judge.

In each of the foregoing six actions, a personal judgment is sought against a foreign railroad corporation which owns no line of railroad and operates no trains within this state. None of these defendants has appointed an agent for service, nor consented to suit within the state. Each such defendant, however, for some twenty-five or thirty years has maintained one or more offices within the state for the solicitation of passenger and freight business upon its lines, and perhaps for other activity.

In each instance, such defendant challenges the jurisdiction of the court, the service of process and (in one or more instances) the venue of the action. The basis of the attack, of course, is the contention that such foreign railroad company is not doing business in the state to such extent as to subject it to in personam jurisdiction, and that an attempt to assert jurisdiction would violate the due process clause. U. S.Const. Amend. XIV, § 1.

Coincidentally, the six motions have come on for consideration at the same time; and by reason of the varying facts between the several cases, necessitate a careful analysis of the controlling authorities upon the question, and an attempt to draw, as accurately as possible, a line of cleavage.

So far as is necessary for consideration of the present motions, the facts of each case are set out as follows:

*C.A.6610, Mrs. Betty Tullis v. Southern Railway System*

The plaintiffs, citizens of this state and residents of this district and division, initiated this action in the state court against the Southern Railway Co. (hereafter "Southern") and the Alabama Great Southern Railroad Co. (hereafter "Alabama"), alleging that the two companies operated jointly as the "Southern Railway System". Process was issued out of the state court and served on one Martin, the agent of the defendant companies in charge of their Houston office. It was removed to this Court on the basis of diversity of citizenship, for the Southern is a Virginia corporation, and the Alabama an Alabama corporation.

The action seeks to recover for personal injuries allegedly received by Mrs. Tullis and her infant daughter near Woodstock, Alabama, when the train on which plaintiffs were riding as fare paying passengers was wrecked by collision with another train.

As the "Southern Railway System", the two defendant railroads maintain two offices in Texas; one at Dallas, the other at Houston. The Houston office is under Martin, the "general agent" of the System in this area. In addition to the general agent, the Houston office is staffed by a traveling freight agent, a chief clerk and stenographer. The Dallas office consists of approximately the same personnel.

The duties of the office consist of the usual solicitation of passenger and freight business, including the contacting of shippers, quoting schedules, and extolling the virtues of the company's services. The Houston office at least engages in some additional activity. While the office does not issue original bills of lading, on request of a consignee that a car be diverted while in transit, the Houston office will take up the original bill of lading and issue a new

one in lieu thereof. While the local office does not sell passenger tickets, it will accept passenger fares, either in check or cash, transmit same to the appropriate company office in another state, and have the ticket returned to Houston where it is delivered by the local office to the passenger. The local office in some instances receives payments of freight charges and delinquent undercharge accounts. It receives, and undertakes to adjust, complaints. The Houston office is authorized to, and from time to time does, order trains to make non-scheduled stops to permit passengers to alight. It issues instructions for certain freight shipments to be expedited. The plaintiffs point to these activities as constituting the doing of business within the state.

*C.A.1376 (Galveston Div.) United States v. Union Pacific Railroad Co., and C.A. 1386 (Galveston Div.) United States v. Union Pacific Railroad Co.*

In each of these actions, the United States asserts a claim on behalf of the Commodity Credit Corp., its wholly owned agency and instrumentality, against the Union Pacific Railroad Co. .(hereafter "Union Pacific"), the City of Galveston, and (in C.A.1376) against the International-Great Northern Railroad Co. (hereafter "I&GN") and (in C.A.1386) against the Burlington-Rock Island Railroad Co. (hereafter "Burlington"). In each instance the action is to recover for the loss of certain wheat owned by the Commodity Credit Corp. It is alleged that the wheat was received by the Union Pacific at Omaha, Nebraska and at Topeka, Kansas for shipment to Galveston, Texas, upon bills of lading issued by that railroad. It was delivered by the I&GN (in C.A.1376) and by the Burlington (in C.A.1386) in Galveston and there stored in a grain elevator owned and operated by the defendant city. The Government alleges that the grain was lost while in transit.

The actions having been filed here, process was issued out of this Court and served upon one Brown, as agent of the Union Pacific. Counsel for the plaintiff contends that service is good under Fed. Rules Civ.Proc. Rule 4(d) (7), 28 U.S.C.A.,

as being effected in conformity with Texas statutes.

In each case Union Pacific alone attacks the jurisdiction. It is a Utah corporation, maintaining a single office in this state, located in Dallas, Texas, within the Northern District of Texas. The office personnel consists of five individuals whose exclusive duties are to solicit passenger and freight business for their company's lines. Beyond this solicitation activity, the evidence shows only that the Dallas office occasionally receives checks in payment of freight charges, which are forwarded to the proper company offices outside of the state.

*C.A.1402 (Galveston Div.) United States v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., and C.A.1403 (Galveston Div.) United States v. Chicago Milwaukee, St. Paul & Pacific Railroad Co.*

In these actions the United States again asserts claims of the Commodity Credit Corporation, its wholly owned instrumentality, against the Chicago, Milwaukee, St. Paul & Pacific Railroad Co. (hereafter "Chicago"), the City of Galveston, and (in C.A.1402) against the Texas & New Orleans Railroad Co. (hereafter "T&NO"), and (in C.A.1403) against the Southern Pacific Co. (hereafter "Southern Pacific"). In each action it is asserted that the Commodity Credit Corp. shipped certain flax from Minneapolis, Minnesota to Galveston, Texas. The Chicago issued its bills of lading in each instance covering the shipments in Minneapolis. The flax was delivered by the T&NO (in C.A.1402) and by Southern Pacific (in C.A.1403) in Galveston, and stored in the elevator of the defendant city. The action against the railroads is predicated upon alleged losses in transit. In each of the cases Chicago alone attacks the jurisdiction.

Each of the actions was filed here, and process issued out of this Court was served upon one Hatcher in Dallas, Texas, as agent for the Chicago, allegedly in conformity with the Texas statute.

The Chicago is a Wisconsin corporation. It maintains a single office in Texas, located in Dallas, within the northern district of this state. Hatcher, the "general agent",

is in charge of the Dallas office. Under him are two traveling freight and passenger agents who travel throughout the state. The evidence does not show any activity on the part of these employees beyond the ordinary solicitation. No tickets or bills of lading are issued, handled or procured; no monies are collected either by cash or check. No claims or complaints are handled.

### C.A.6281 (Houston Div.) Ins. Co. of N. A. v. Lone Star Package Car Co.

Holding by subrogation the claim of the original owner of the goods (who is not a party to the action), the plaintiff Insurance Co. of North America (hereafter "Insurance Co."), a foreign corporation with permit to do business here, instituted this action in this Court against the defendant Lone Star Package Car Co., Inc. (hereafter "Lone Star"), a Texas corporation and an interstate freight forwarder, for damages to certain machinery shipped from Philadelphia, Pennsylvania to Laredo, Texas, and thence from Laredo back to Philadelphia. Jurisdiction is based on the fact that the action is asserted under the Carmack Amendment, Title 49 U.S.C.A. § 20(11), and likewise by reason of diversity of citizenship. It is alleged that the machines were delivered in good condition to the defendant freight forwarder in Philadelphia, which issued a bill of lading therefor; that the defendant, through the carriers with whom it had arranged transportation, transported the goods to Laredo, but upon their arrival there the machines were found to be damaged; that the machines were returned from Laredo to the manufacturer in Pennsylvania for repairs, but upon their arrival were found to have sustained further damage on the return trip, to such extent that they were useless and of little value. In support of its alternative action at common law, plaintiff alleges that the damage resulted from negligence of the defendant while the goods were in its custody and control.

Appearing and answering herein, with leave of Court the defendant, as third party plaintiff, has impleaded the Baltimore & Ohio Railroad Co. (hereafter "B. & O.") as the initial carrier, and the Texas Mexican Railway Co. (hereafter "Texas Mexican") as the delivering carrier (of the initial trip), and seeks recovery over against either or both of such defendants as their responsibility for the damage may appear.

The third party plaintiff delivered the machines to B. & O. at Philadelphia and received bill of lading therefor consigned to itself at St. Louis. On arrival at St. Louis, the goods were delivered to third party plaintiff, which then reshipped by another carrier to Laredo.

B. & O. is a Maryland Corporation. It maintains offices in both Dallas and Houston. Process issued out of this Court was served on one Land, the "Southwestern Freight Representative" in charge of the Dallas office, and likewise on one Barcus, the "District Freight Representative" in charge of the Houston office. It is contended that service on Land was adequate under Fed.Rules Civ.Proc. rule 4(d) (3) as "a managing or general agent" of the B. & O., and on Barcus was sufficient under Rule 4(d) (7) as constituting service in the manner prescribed by state statute.

The activities of the Dallas office embrace a very large territory, including most of the State of Texas and a portion of Old Mexico. The Houston office operates under the Dallas office, as does a single employee at San Antonio. In both Dallas and Houston, the B. & O. office is listed in the telephone directory, the city directory and the building directory. These offices are connected by extensive teletype systems with B. & O. offices in other states.

There are eight employees in the Dallas office, five in the Houston office. In addition to the usual solicitation, the local B. & O. office will perform the following functions.

While it does not sell tickets, the local office will order the ticket made up by one of the local lines, where the passenger pays for and procures it. B. & O. will request and confirm his reservation. It receives and processes complaints of lost baggage by passengers, and of lost or delayed freight for shippers. While the settlement of claims against the company is not handled by the local office, the local employees do facilitate the handling thereof, under-

take to placate the shippers, and frequently deliver checks or drafts in satisfaction of such claims. The local office negotiates for office space from time to time, and purchases locally certain equipment which it may need (as office furniture, automobiles for its traveling representatives, etc.). Other supplies are furnished by the company.

In addition to an aggressive solicitation of business (resulting in over one million tons of freight handled by the B. & O. in 1951 which originated, or terminated, in Texas), the local agents make periodic reports of business conditions expected to influence freight movements in which B. & O. is interested, assist the higher echelon employees of the company on their periodic visits to the state, and perform similar services.

*The federal authorities dealing with due process:*

 The defendants place principal reliance on Green v. Chicago B. & Q. Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, long the refuge of foreign corporate defendants in such circumstances, upon those United States Supreme Court cases which follow Green, as Philadelphia & R. Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed 710; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, and upon the recent opinion of the Court of Appeals for this (5th) circuit in Rosenthal v. Frankfort Distillers Corp., 193 F.2d 137. In seeking to sustain jurisdiction, plaintiffs urge the line of cases beginning with International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, down to and including International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and Travellers Health Assoc. v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, together with many lower court holdings subsequent to the Shoe Company case. Plaintiffs argue that Shoe Company has effected a revolutionary change in our concept of the requirements of due process. While I am not prepared to give the opin-

ion such a broad interpretation, practically without exception the recent lower court opinions interpret it as liberalizing the rule to some extent. It must be conceded that the present tendency is toward relaxing its stringency. Undoubtedly this opinion has had a profound effect upon the thinking of the courts on this issue. This is illustrated by the fact that since Shoe Company we find such a myriad of opinions dealing with the question as to lead to the conclusion that the courts of a great many jurisdictions have undertaken to reexamine their own decisions in the light of this opinion.

Before Shoe Company, while the cases are in agreement that no fast and inflexible rule may be formulated or applied in determining the requirements of due process for jurisdictional purposes, nevertheless over the years a fairly definite and workable rule was evolved. Under Green v. Chicago, B. & Q., supra, it was established that the "mere solicitation" by a foreign railroad company of freight and passenger business within a state did not constitute doing business there so as to permit the state to subject the railroad to in personam jurisdiction. While never overruled, later cases from the Supreme Court and a number of lower court opinions drastically curtailed this doctrine. In its opinion in St. Louis S. W. Ry. Co. v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486, and by its affirmance, 255 U.S. 565, 41 S.Ct. 446, 65 L.Ed. 788, of the holding of the Supreme Judicial Court of Massachusetts in Missouri K. & T. Ry. Co. v. Reynolds, 224 Mass. 379, 113 N.E. 413, Id., 228 Mass. 584, 117 N.E. 913, the Supreme Court sustained jurisdiction in cases originating in the state courts on only slightly stronger facts. The Green case was characterized as "extreme" in International Harvester Co. v. Kentucky, supra, 234 U.S. at page 586, 34 S.Ct. 944, although the court expressed no desire to depart from its doctrine. In some cases the lower courts have held that solicitation, where permanent and continuous, was enough;[1] and others, while continuing to

---

1. Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915; Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926.

pay lip service to the Green doctrine and recognizing its authority as applied strictly to its own facts, have held that only slightly stronger facts would warrant a contrary result.[2] Thus, before Shoe Company, I think it may fairly be said that the mere solicitation of business within a state did not subject the foreign corporation to in personam jurisdiction, but that any substantial activity beyond solicitation was sufficient for that purpose. And under these older holdings, if the corporation be present and doing business within the state, then it was there for all purposes, and a transitory cause of action there might be asserted against it, whether by a citizen of the forum or of a sister state, without regard to the question whether the cause of action originated from the corporate activity within the state or elsewhere Baltimore & O. Ry. Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28; Miles v. Illinois Central Ry. Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129; Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788; Barnett v. Texas & P. Ry. Co., 2 Cir., 145 F.2d 800; Missouri K. & T. Ry. Co. v. Reynolds, supra; Tauza v. Susquehanna Coal Co., supra.

Then came International Shoe Company v. Washington, and a little later Travellers Health Ins. Assoc. v. Virginia. The liberalizing effect of Shoe Company cannot be restricted (as the defendants argue) to its peculiar facts, namely, to regulatory actions asserted against such foreign corporations by the state itself. As I understand the Shoe Company doctrine, its effect is to show us a different approach to the problem, and to point out certain considerations which are of controlling importance in reaching a decision. No longer do we undertake to determine categorically and for all purposes whether a corporation is "present" within the state. Rather, when a cause of action is asserted against such foreign corporation, we determine whether its ties and connections with the state of forum, and the extent of its activity therein, are such that it would offend "tradition-al notions of fair play and substantial justice" for the court to assume jurisdiction of that particular action asserted by that particular plaintiff. In determining this question, we look not only to the regularity, continuity and extent of the corporate activity within the state (the principal considerations under the older cases), but we likewise look to two other factors of great importance: (1) whether the cause of action asserted resulted from the corporate activity within the state; and (2) the closely related question of a weighing of the conveniences to the parties. This latter consideration is not unlike that found in the doctrine of forum non conveniens, Hutchinson v. Chase & Gilbert, supra; Kilpatrick v. Texas & P. Ry. Co., supra. From the concurring opinion of Mr. Justice Douglas, and the dissent of Mr. Justice Minton, in Travellers Health Assoc. v. Virginia, when read in connection with Shoe Company, it becomes clear that "doing business" is now a variable. While the State of Virginia might, without offending due process, assert jurisdiction over the Travellers for some purposes, while that corporation had no offices and sent no agents into the state (and hence was doing little, if any, business, under the older concept), it does not follow that a citizen of that state might hold Travellers upon an in personam action asserted in the courts of that state.

If, as I conceive to be the case, Shoe Company enunciated a new and somewhat different rule to be followed by the lower courts, its application has not been uniform, nor has it lessened the uncertainties and complexities with which the determination of this question has long been beset. Rather, the prophecy of Mr. Justice Black, 326 U.S. 322, 66 S.Ct. 154, that the rule would lead to conflicts and uncertainties, seems to have been well justified. Looking alone to the railroad cases which have been decided since Shoe Company, we find many upholding jurisdiction,[3] and an equally impressive array denying it on substantially similar

---

2. Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139; Jacobowitz v. Thomson, 2 Cir., 141 F.2d 72.

3. Lasky v. Norfolk & W. Ry. Co., 6 Cir., 157 F.2d 674; Willett v. Union Pac. R. Co., D.C.N.D.Ohio, 76 F.Supp. 903; Isenberg v. Atlantic Coast Line R. Co., D.C. Mass., 82 F.Supp. 927; Wadell v. Green

facts.[4] As result, I can see no escape from the conclusion that we must continue, as under the older rule, to examine the activities of each defendant to determine whether it is a little more or a little less, even where the problem is confined to cases of foreign railroads maintaining solicitation offices in states beyond their operating lines. This uncertainty in the law is regrettable. The determination of each case must depend upon the notions of justice and fair play entertained by the particular court in which the action is asserted. From the cases cited above, it must be recognized that even judges are not always in accord on what constitutes justice and fair play.

Making my own application of the rule to the facts before me, I must say that I find no basis for the plaintiffs' contention that the doctrine of Green v. Chicago, B. & Q., as restricted to its own facts, has been overruled by Shoe Company or other recent cases, or that now it should be disregarded. The Court's opinion emphasizes the fact that the business of the defendant which the State of Washington undertook to regulate was confined exactly to that which was transacted within that state. Undoubtedly, where the cause of action arises from the defendant's activities within the state of forum, the older rule has been relaxed, and in my opinion very little additional activity on the part of the defendant need be shown to sustain jurisdiction.

The Court points out that even under the older cases " 'presence' in the state in this sense has never been doubted when the ac-

tivities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on * * *." 326 U.S. at page 317, 66 S.Ct. at page 159.

But I find nothing in the opinion which indicates that, where the cause of action arises elsewhere, any weaker ties, or fewer contacts with the state of forum than required by the older cases will now suffice. If this interpretation which I place upon the Shoe Company opinion be correct, then it is consistent with other recent decisions upholding, against constitutional attack, the attempts of a state to hold non-residents strictly accountable, in the courts of that state, for the consequences of any transaction or activity in which such non-resident may engage within the state's borders, as the non-resident motorist statutes [5] and the regulation of the securities business;[6] and it tends to make further inroad on the broad doctrine of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 and Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250.[7]

As further tending to show that Shoe Company should not be construed as overruling the Green doctrine, it is noted that the opinion cites the Green case, and that the latter has been recognized and followed in many of the recent lower court decisions heretofore cited.

While there are some exceptions, those cases which have treated the Green doctrine with least sympathy are those like International Harvester v. Kentucky, supra, and more recently Frene v. Louisville Cement Co., supra; Tauza v. Susquehanna

Textile Assoc., Inc., D.C.Mass., 92 F. Supp. 738; Perkins v. Louisville & N. R. Co., D.C.S.D.Cal., 94 F.Supp. 946; Kendrick v. Seaboard Air Line R. R., D.C. E.D.Pa., 98 F.Supp. 372; Moore v. Atlantic Coast Line R. Co. D.C.E.D.Pa., 98 F.Supp. 375.

4. Kelley v. Delaware, L. & W. R. Co., 1 Cir., 170 F.2d 195; Zuber v. Pennsylvania R. Co., D.C.N.D.Ga., 82 F.Supp. 670; Doyle v. Southern Pac. Co., D.C. E.D.Mo., 87 F.Supp. 974; Fiorella v. Baltimore & O. R. Co., D.C.E.D.Pa., 89 F.Supp. 850; Smith v. Louisville & N. R. Co., D.C.S.D.N.Y., 90 F.Supp. 189; Gold-

stein v. Chicago, R. I. & P. R. Co., D.C. W.D.N.Y., 93 F.Supp. 671; Webber v. Pan American Airways, D.C.Minn., 85 F. Supp. 959, an airline, rather than railroad case; Lambert v. Schell, 235 N.C. 21, 69 S.E.2d 11.

5. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, and see Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 88 A. L.R. 170.

6. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097.

7. As does Sugg v. Hendrix, 5 Cir., 142 F.2d 740.

Coal Co., supra; Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33; Schmikler v. Petersime Incubator Co., 1 Cir., 177 F.2d 983; and Gray Co. v. Ward, Tex.Civ.App., 145 S.W.2d 650, where the corporate manufacturer or producer of a product not only sends its salesmen and solicitors into other states, but where such sales efforts are followed by physical movement of the company's product into the state of the forum. Certainly this is more of a "doing of business" than where a railroad merely seeks to sell its services in the state of forum, with all of such services to be performed elsewhere.

Entertaining a great respect for the rule of stare decisis, I feel inclined to follow Green until it is overruled by an opinion of equal dignity.

### As to Civil Actions 1402 and 1403, and 1376 and 1378.

■ From the facts before me, it appears that the Union Pacific and the Chicago are doing no more than soliciting passenger and freight business within this state. There is no evidence that their local representatives are authorized, or undertake, to make contracts for or bind the company in any way. They sell no tickets, issue no bills of lading, give no orders for the operations of trains or for the handling of freight. Under the authority of Green v. Chicago, B. & Q., it is my opinion that they are not "present within the state", and likewise that it would "offend traditional notions of fair play and substantial justice" for them to be called upon to defend the instant actions here where their origin was in a foreign state. As to these defendants, the motion to dismiss will be sustained.

### As to Civil Action 6610.

■ As to the Southern and the Alabama, I reach a different conclusion. The local office of these concerns does a great deal more than solicit passenger and freight business. As their activities have been set out in some detail above, it will suffice here to say that in picking up the old, and issuing new, bills of lading, the local office has at least some power to contract on behalf of the company. Its practice of receiving money for, and later delivering tickets to passengers, would indicate additional authority reposed in the local office. Of great importance to my mind is the practice of the local office in issuing orders for the actual operations of the defendants' trains, in directing that trains be stopped at non-scheduled stations so that passengers may alight, and in ordering that certain freight shipments be expedited or given preferential handling. This appears to me to be the actual transacting of railroad business within the state, similar to the activities of a so-called "on line" office as distinguished from what the witnesses referred to as an "off line" office, as here. While the tort complained of occurred in another state, this is the state of the plaintiffs' residence. Certainly some of the plaintiffs' witnesses reside here. I do not consider it an undue hardship on this defendant, in weighing the conveniences, to require it to meet the plaintiffs here on their chosen ground. This is not the capricious choice of forum by the plaintiffs, selected only because it "promised the richest harvest" L. Hand, Judge, in Kilpatrick v. Texas & P. Ry. Co., supra, 166 F.2d at page 790.

### As to Civil Action 6281.

■ Of all of the present cases, I have found difficulty in my own mind in reaching a decision only as to the B. & O. From the facts before me, it appears that the case is a very close one. Certainly the activities practiced by the local representatives of B. & O. have been long continued and intensive. Likewise they have been most productive. But do they go beyond "mere solicitation"? It is argued that the use of the name and symbol of the company on the office door, the use of letterheads bearing the company name and address of the Texas office, and its listings in the telephone and city directories are important considerations. But these facts simply show that in fact it is the B. & O. which is doing some business here, a fact which no one denies. As was said in Green v. Chicago, B. & Q., it is evident that the company is here doing a considerable business of a certain kind. Its activities in tracing lost baggage, lost or delayed

freight, receiving complaints, and its efforts to placate dissatisfied passengers or shippers after their patronage of the company's services has ceased, to me are the more weighty considerations. But I think this is little, if any, more than the solicitation of business, and amounts only to a continued effort to keep shippers and passengers happy with a thought toward future business. Certainly this is not the type of activity in which the local office of the Southern and the Alabama engages. I might describe the B. & O.'s activity as merely selling the services of its railroad, while in my opinion that of the Southern and the Alabama actually constitutes "railroading".

I likewise am influenced by the fact that in no sense did the cause of action arise from the defendant's activities here. The shipment did not move on a through bill of lading wherein the B. & O. agreed, through its connecting lines, to make delivery in Laredo.[8] The third party plaintiff freight forwarder, for reasons sufficient unto itself, shipped by B. & O. bill of lading only from Philadelphia to St. Louis, and accepted delivery at the latter point. Whether the cause of action against B. & O. sound in contract or in tort, it arose elsewhere.

As was true in Green v. Chicago, B. & Q., supra, this action was filed in this Court, and the more liberal interpretation which may be afforded to removed cases, where the question is one of interpretation of a state statute, or of the jurisdiction of the state courts, as suggested in the Green case, 205 U.S. at page 533, 27 S.Ct. 595, 51 L.Ed. 916, in St. Louis S. W. Ry. Co. v. Alexander, supra, and in Missouri K. & T. Ry. Co. v. Reynolds, supra, does not prevail; as in the Green case, the suit is by a citizen of the forum, based on a for-

eign cause of action; and there, as here, the local agents did something more than solicit, in a strict sense.

On the basis of that decision, with some reluctance,[9] I feel the motion of B. & O. to dismiss should be sustained.

*The Texas statutes and decisions.*

Having determined that jurisdiction cannot be maintained over the Union Pacific, the Chicago and the B. & O. within constitutional limits, but that it may be so maintained over the Southern and the Alabama, I pass to the Texas authorities to determine whether the state has provided for bringing these corporations within its courts and whether the service of process was adequate. Rosenthal v. Frankfort Distillers, supra, and Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193 indicate that this latter question of state law should be determined first, for only after it is determined that the case is within the purview of the state law is the federal question reached. The cart-before-the-horse consideration which these questions have received here results from the fact that I construe the Texas statute and cases interpreting same rather broadly, and feel that the greater jurisdictional burden is imposed by the federal cases testing constitutionality than by the state cases testing the application of the state statute. As C.A.6610 was removed from the state court where service of process was had under state procedures, we must see if it meets the state test as well.

The present statute, Article 2031, Vernon's Tex.Civ.St., was enacted in 1935. It contains no requirement that a foreign corporate defendant be doing business in Texas or that it maintain an office in Texas, but simply provides the means of serving process.[10] Section 27 of Article 1995,

---

8. Compare St. Louis S. W. Ry. v. Alexander, supra.

9. My reluctance perhaps springs from the fact that counsel for the third party plaintiff has filed a most excellent and exhaustive brief, which has been of great benefit in my consideration of the questions involved.

10. "In any suit against a foreign corpora-

tion * * * pending or hereafter filed in this State, to which any foreign corporation is a party or is to be made a party, process may be served on the President, Vice-President, Secretary, Treasurer, General Manager, or upon any local or travelling agent or travelling salesman of such corporation * * * in this State."

the general venue statute, provides that suit may be maintained against such foreign corporation in any county in which such corporation is doing business. As originally drafted, these two articles were a part of the same statute, Acts 1885, p. 79, ch. 83; Gammel's Laws Vol. 9, p. 699, and the "doing business" requirement therein found applied both to the section providing for service of process as well as for venue of such actions. The statute was amended in 1919 to limit the cases within which service of process might be had upon any local or traveling agent within the state to those causes of action "arising within the State of Texas" Acts 1919, p. 181, ch. 115, Gammel's Laws, Vol. 19. Thus, under the amendment, if service was had upon one of the named corporate officers, a cause of action arising elsewhere might be asserted; but if upon a mere local agent, the cause of action must have arisen in Texas. By further amendment, as reflected by the present article, this restriction as to the type of cases wherein service might be had upon local agents has been removed. This series of amendments indicates a continuing liberalization and extension of the Texas act.

There is little recent authority in this state upon the subject and the Texas cases are not of great help. In Frick Co. v. Wright, 23 Tex.Civ.App. 340, 55 S.W. 608, jurisdiction is sustained over a foreign corporation which maintained a local agent within the county of suit. Holding only that the statutory terms imply that such local agent is a true representative of the corporation appointed to transact its business in the state, as distinguished from a temporary or casual agency, the court concludes that the agent was of the former type, without setting out the facts in this particular.

A number of cases,[11] of doubtful authority today, sustained jurisdiction over foreign railroad corporations owning no lines and operating no trains within the state on the theory that a Texas railroad corporation was so closely affiliated and allied with the foreign defendant, that, in effect, it was its alter ego, and that the foreign corporation was transacting its railroad business here through its local affiliate. Others [12] sustained jurisdiction against foreign railroad corporations merely by stating that the question as to whether such defendants did business, or had agents, within the state, was a question of fact, and that the determination of the trial court would not be disturbed.

Probably closest in point of fact to the present controversy is St. Louis, I., M., & S. Ry. v. Bass, Tex.Civ.App., 140 S.W. 860. Jurisdiction is there upheld against a foreign railroad company operating no lines within the state, where plaintiff was injured in Texas while employed by a local railroad company as result of a hidden defect in the car of the foreign defendant, which car was being hauled by the local railroad. The defendant there maintained in the state a "soliciting passenger agent" upon whom service of citation was had. This holding, which at first blush would appear to be strongly in favor of plaintiffs' position in all of our cases here, is weakened by the fact that the court does not set forth the authority possessed by the soliciting agent, but simply comments that the defendant did not sufficiently show a want of authority in him to sustain its attack on the court's jurisdiction. In El Paso & S. W. Ry. Co. v. Chisholm, Tex. Civ.App., 180 S.W. 156, the court again sustains jurisdiction in favor of a citizen of Texas, this time on a foreign tort action, against a railroad operating no lines within the state; but here the facts of doing business were quite strong in that the company maintained an office within the state, occupied by its general manager,

11. Buie v. Chicago, R. I. & P. Ry. Co., 95 Tex. 51, 65 S.W. 27, 55 L.R.A. 861; St. Louis & S. F. Ry. Co. v. Arms, Tex.Civ. App., 136 S.W. 1164; St. Louis & S. F. Ry. Co. v. Kiser, Tex.Civ.App., 136 S. W. 852; Missouri, K. & T. Ry. Co. v. Demere & Croggin, Tex.Civ.App., 145 S.W. 623; Missouri, K. & T. Ry. Co. v.

Goodrich, Tex.Civ.App., 149 S.W. 1176; Missouri, K. & T. Ry. Co. of Texas v. Bunkley, Tex.Civ.App., 153 S.W. 937.

12. Southern Pacific Co. v. Craner, Tex.Civ. App., 101 S.W. 534; Southern Pacific Co. v. Allen, 48 Tex.Civ.App. 66, 106 S.W. 441.

who there performed his duties and who actually supervised and controlled the company's operations, although all of such operations were performed across the state line in New Mexico. The more recent case of Gray Co. v. Ward, supra, sustains jurisdiction over a foreign manufacturing concern which maintained a regular and permanent representative in this state. This representative not only solicited business for the company but received and investigated complaints, made certain repairs on the company's equipment after it had been received and installed in the state, and performed similar services. Citing only the federal cases as to the extent of business that must be done to constitute the corporate presence within the state, the court concluded that the activities of the sales representative were adequate for this purpose and that service of process upon him was sufficient.[13]

Likewise of interest is Atchison, T. & S. F. Ry. Co. v. Weeks, D.C., 248 F. 970, reversed 5 Cir., 254 F. 513, 516. The District Court for the Western District of Texas there upheld the validity of a state court judgment (and denied an injunction attacking it), wherein jurisdiction was asserted over a foreign railroad corporation operating no trains within the state, upon a cause of action asserted by a foreign plaintiff and arising in a foreign state. The trial court held that the defendant was doing business within purview of the Texas authorities. The Circuit Court of Appeals for the Fifth Circuit, in reversing, commented that the constitutional question "is not free from substantial doubt", and that the trial court in an able opinion had correctly applied the Texas decisions, but that the weight of authority among the federal cases was to the effect that jurisdiction was wanting under the facts.

These and other Texas cases, not sufficiently similar in point of fact to note further, indicate to me that the Texas statute as written, and the Texas opinions interpreting it, have gone quite far in asserting jurisdiction; farther perhaps in some

instances than would have been warranted under the federal due process cases.

In interpreting the Texas authorities liberally, I have trouble in reconciling only one statement in the recent opinion of the Court of Appeals for the Fifth Circuit in Rosenthal v. Frankfort Distillers, supra. In that case, action of the trial court in denying jurisdiction over a foreign whiskey distilling company, which sold and shipped its products into this state, was upheld on two grounds: first, that the activities of the defendant corporation did not constitute doing business within the meaning of the Texas statutes, as construed by the Texas courts; and on the second ground, that service on the state-wide agent of the defendant was inadequate under the Texas statute. As the activity of the defendant consisted of no more than solicitation, it may be that the Texas courts would not have assumed jurisdiction. However, with due deference, it is submitted that the opinion places an unduly restrictive interpretation on the Texas authorities. If this be true, it results from the court's assumption that "doing business" under Articles 1529 and 1536 of the Texas statutes is the same as "doing business" under Article 2031. The term "doing business" has been loosely used by the courts to cover a number of different concepts. For example, under Article 1529, any foreign corporation "desiring to transact or solicit business in Texas" is required to secure a permit, and on failing to do so, by Article 1536 is subjected to certain penalties, including the denial of its right to maintain any suit in any court of the state. Thus we say that a foreign corporation must secure a permit if it desires to do business here. The Texas courts have construed this statute very strictly, and the Supreme Court of Texas has held on more than one occasion that a single isolated transaction by the foreign corporation, in line with its corporate activities, would be sufficient to constitute its "doing business" for this purpose, Normandie Oil Co. v. Oil Trading Co., 139 Tex. 402, 163 S.W.2d 179, and

13. For a similar case supporting jurisdiction on somewhat weaker facts, see Harbich v. Hamilton Brown Shoe Co., D.C.,

1 F.Supp. 63, opinion by Chief Judge Kennerly of this Court.

cases there cited. There is one very important exception to this rule, however, and that is that the business transacted in the state must be intrastate in character; for if the activities are interstate in character, the State of Texas cannot burden such activity by requiring a permit and imposing penalties. This is true even though the activities be continuous, extensive, and of long duration. This inhibition on the state's control results, of course, from the commerce clause, art. I, Sec. 8, Cl. 3, rather than from the due process clause, Amend. XIV, Sec. 1, of the federal constitution. So the cases which determine whether a corporation is doing business under Article 1529 in fact determine whether such business is intrastate in character (and hence subject to state control) or interstate in character (and free of state control). In determining the question of doing business for jurisdictional purposes, however, the question is one of the quantity, the nature, and the permanence of the corporate activity. The interstate or intrastate nature thereof is of little importance, for its has been clear since International Harvester v. Kentucky, supra, that the ordinary processes of the courts may reach corporations carrying on business within a state which is wholly of an interstate commerce character. Of the cases cited by the court in the Rosenthal opinion, dealing with the question of state court jurisdiction, footnote 5, page 140 of 193 F.2d, with the single exception of Flowers v. Pan American Refining Co., every one deals with the question of whether the foreign corporation was doing business under Article 1529, and holds that the business of the corporation, in each case, while extensive, was interstate in character.[14] Flowers v. Pan American Refining Co., Tex.Civ.App., 154 S.W.2d 982, arose under Article 7084, the franchise tax statute, and likewise involved the question of interstate commerce. I do not believe these cases to be of controlling importance on the question of do-

ing business for jurisdictional purposes, but if so, cases like Normandie Oil Co. v. Oil Trading Co., supra, likewise might have been cited, holding that where the activity was intrastate in character, even a minimal amount was sufficient to constitute "doing business" under Article 1529.

From the foregoing, I am clearly of the opinion that the activities of the Southern and the Alabama are sufficient to bring it within purview of the Texas statute.

█ There remains only the question as to whether Martin was a proper agent for service, which in turn depends upon the question as to whether he was a "local agent" or "traveling agent" as those terms are used in Article 2031. I think he was.

The statutory local agent has been defined as an agent of the foreign corporation at a given place or within a definite district, Sharp & Dohme, Inc. v. Waybourne, Tex.Civ.App., 74 S.W.2d 413; Western Cottage, etc., Co. v. Anderson, 97 Tex. 432, 79 S.W. 516; 11 Tex.Juris. 200. The Houston office under Martin's control had a defined area, including the cities of Freeport and Galveston, Texas. The agency was a permanent one, and in my opinion is within the statutory definition.

In conclusion, it is noted that the Southern and the Alabama have not raised the question that the assertion of jurisdiction here would constitute an undue burden on interstate commerce, as have certain of the defendants in the other actions. There has been no evidence offered that it would be expensive or burdensome on the defendants to try the case here. Because the issue has not been raised in this action by the Southern and the Alabama, and because it becomes unnecessary in light of the disposition made in the cases of those defendants which raise the question, it is not considered further here.

It follows that motions to dismiss by the Union Pacific in actions 1376 and 1386, by the Chicago in actions 1402 and 1403, and

---

14. Miller v. Goodman, 91 Tex. 41, 40 S.W. 718; Maury-Cole Co. v. Lockhart Groc. Co., Tex.Civ.App., 173 S.W. 262; Caddell v. J. R. Watkins Co., Tex.Civ.App., 227 S.W. 226; McCaskey Reg. Co. v. Mann, Tex.Civ.App., 273 S.W. 1113; S. W. Gen'l Elec. Co. v. Nunn Elec. Co., Tex. Comm.App., 283 S.W. 781; John Dickson Pub. Co. v. Bryan, Tex.Comm.App., 5 S.W.2d 980.

by the B. & O. in action 6281 will be sustained; the motion to dismiss by the Southern and the Alabama in action 6610 will be denied.

Clerk will notify counsel, who will present appropriate orders in the various cases within 10 days.